ANTHONY FARINA AND ERNEST G. FARINA,
D/B/A FARINA BROTHERS CO.
*vs.*
THE SHERIDAN CORPORATION

Androscoggin.    Opinion, June 12, 1959.

*Frank W. Linnell,* for plaintiff.

*John G. Marshall,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.  WEBBER, J., concurring specially. WILLIAMSON, C. J., dissenting and joined by SULLIVAN, J.

TAPLEY, J.   On exceptions and motion for a new trial. The action is in assumpsit and was tried before a jury at the March Term, 1957 of the Superior Court for the County of Androscoggin.  The verdict was in the sum of $808.43.

The defendant filed a plea of general issue, with brief statement of special matter of defense alleging accord and satisfaction. The plaintiffs were general contractors holding a general contract for certain construction work for the United States Government on a project at Limestone, Maine. The contract included the erection of steel buildings. The defendant was in the business of selling and erecting prefabricated steel buildings and, as a subcontractor under the plaintiffs' general contract, agreed to furnish and erect certain prefabricated steel buildings in accordance with the requirements of the government and with specifications contained in its subcontract. There arose during their relationship disputes between them concerning a claim for extras advanced by the defendant. These disputes never were resolved by mutual negotiations. The amount of the disputed claims for extras were in the sum of $813.43. During the course of the controversy the plaintiffs, intending to pay the balance due on the contract, mailed a check to the defendant, on December 20, 1954, in the sum of $8538.09. This check did not include the disputed amount of $813.43. The sum of $8538.09 constituted an overpayment of the balance due under the contract by $2214.39. The defendant discovered this overpayment and wrote to the plaintiffs calling their attention to the overpayment and, after deducting $813.43, the amount of the claim for extras, enclosed a check for $1400.96, the amount of the overpayment, less the disputed $813.43. The plaintiffs by this action seek to recover this amount of $813.43.

Exceptions were taken by the defendant to the admission of certain testimony allowed by the presiding justice over objections and to the overruling of a motion by the defendant for a directed verdict. A motion for a new trial was addressed to the Law Court by defendant after a jury verdict favoring the plaintiffs.

The real issue between the parties is one of accord and satisfaction.

The record of the case develops certain uncontroverted facts which we propose to consider in chronological order. On November 4, 1954 the defendant communicated with the plaintiffs in writing, requesting balance of the contract price in as much as the work had been completed and approved. In this letter the plaintiffs were advised that in addition to the balance due on the contract price there was an additional sum claimed for extras. There was enclosed an itemized statement covering the extras which amounted to $813.43. The plaintiffs on November 8, 1954 answered by denying their responsibility for any extras. The next communication was from the defendant to the plaintiffs acknowledging receipt of the balance due under the original contract, advising of the overpayment and remitting a check for $1400.96 which was the amount the defendant determined was due the plaintiffs after having deducted the amount of $813.43 for extras claimed. The check on its face was payable to the order of "Farina Brothers." On the left hand side of the check there was space provided for notations. At the top of this space were printed the words "NO RECEIPT NECESSARY IF INCORRECT PLEASE RETURN" and underneath these printed words, in handwriting, "in full." On the reverse side of the check appears the words "For deposit only to the account of FARINA BROTHERS CO." In addition to the check there is in evidence a deposit slip in the name of Farina Bros. Co. showing deposit of check from Sheridan Corp. in the amount of $1400.96.

The defendant took it upon itself to return the overpayment, less its claim for extras, by sending a check to the plaintiffs with the notation of "in full" accompanied by a letter.

Chap. 113, Sec. 64, R. S., 1954, becomes pertinent. It reads:

> "No action on demands discharged by partial payment. — No action shall be maintained on a demand settled by a creditor or his attorney entrusted to collect it, in full discharge thereof, by the receipt of money or other valuable consideration, however small."

The principles of accord and satisfaction require a tender on the part of the debtor in satisfaction of a particular demand and that the creditor accepts it as such. *Fogg* v. *Hall, et al.,* 133 Me. 322; *Crockett, Applt.,* 130 Me. 135. Counsel for the defendant cites with confidence the case of *Larsen* v. *Zimmerman,* 153 Me. 116, a case of fairly recent date determined by this court. Counsel for the plaintiffs, with frankness, admits that unless the facts of the instant case can be distinguished from those of the *Larsen* case, the decision in the *Larsen* case should prevail here. The *Larsen* case was before the Law Court on exceptions to the acceptance of a referee's report. A transcript of the evidence taken before the referee was not a part of the record. There was a disputed claim arising from the construction of a house. The check delivered by Zimmerman to Larsen in the sum of $1000.00 bore the printed words "By endorsement this check is accepted in full payment of the following account" and below this was written "Final." There was also in print the following words "If incorrect Please return. No other receipt necessary." The check bore the endorsement of "Oskar Larsen." This court referred to the findings of the referee when it said, on page 119:

> "The findings 'It does not appear, however, that such intent was made clear to the plaintiff prior to his receipt of the check,' and 'There is no evidence that the parties discussed the offer of $1000.00 in final settlement,' are facts accepted by us at their full value. The error of law lies in the

conclusion of the referee that to complete an accord and satisfaction the check was not evidence in itself sufficient without more to establish the intention of the defendants and the plaintiff in giving and receiving the check."

We also said, on page 118:

"The record before us does not include a transcript of the oral testimony. From the report of the referee and the bill of exceptions it plainly appears that no evidence entered the case relating to the sufficiency of the asserted accord and satisfaction apart from the findings stated above from the bill of exceptions. To these facts—and in particular to the check with its terms and conditions—the referee erroneously applied the pertinent rules of law."

To summarize the facts in the *Larsen* case, (1) an agreement between the parties to build a house; (2) a disputed claim arising from the construction of the house; (3) a check for $1000.00 paid by Zimmerman to Larsen by means of a check marked "final;" (4) the acceptance of the check by Larsen. This court determined under these circumstances that the wording on the check expressed the intent of the debtor to offer full satisfaction of the debt by tendering the check and that by accepting the tendered check Larsen accepted the offer and thereby accord and satisfaction was accomplished. This transaction involved one claim, namely, the disputed price charged for the construction of the house.

The instant case involves an entirely different set of facts. In the first place the transaction involved two claims, one for the overpayment of the contract and the other a claim for extras about which there was a dispute. The evidence not only involves the check but also a letter advising plaintiffs that defendant has a claim for extras, an itemized statement detailing the extras, a communication from de-

fendant to plaintiffs returning the overpayment, less the deduction for extras, other correspondence bearing on the subject and, in addition to all of this, some verbal testimony. Thus the factual aspects of the *Larsen* case as compared to those of the case at bar are distinguishable.

The crux of this case is whether the defendant made known to the plaintiffs in a clear and convincing manner its intention of deducting the claim for extras from the amount of money in its possession belonging to the plaintiffs and, further, did the plaintiffs understand the conditions of acceptance or were they of such character that they should have understood them?

The evidence not only involves the check but also correspondence concerning the check, the claim for extras and other matters bearing on the controversy. The principle of accord and satisfaction and the requirements of its proof (under Chap. 113, Sec. 64, R. S., 1954) are well explained in the case of *Fuller* v. *Smith,* 107 Me. 161, wherein the court on page 165, said:

> "Under this statute an accord and satisfaction is an executed agreement, whereby one party gives and the other receives, in satisfaction of a demand, liquidated or unliquidated, some money or other valuable consideration, however small. No invariable rule can be laid down as to what constitutes such an agreement, and each case must be determined largely on its own peculiar facts. The agreement need not be express, but may be implied from the circumstances and the conduct of the parties. It must be shown, however, that the debtor tendered the amount in satisfaction of the particular demand, and that it was accepted by the creditor as such."

There is involved in the *Fuller* case an acceptance of a check which was accompanied by a letter purporting to explain what the check was in payment of. The intention of

the debtor, as evidenced by the phraseology of the letter, became material and the court, on page 168, spoke as follows in relation to this letter:

> "The effect of a written instrument construed as an independent piece of evidence, apart from any other fact or circumstance, may be quite different from the effect of the same instrument when interpreted in the light of the circumstances and conduct of the parties from which the instrument arose. The letter which accompanied this check does not stand alone to be construed, as to its effect upon the plaintiff, apart from other facts and circumstances. Its effect upon the plaintiff, in contemplation of law, is the effect which it would have had upon a reasonable fair minded person in his then situation, and in ascertaining that situation consideration must be given to the previous circumstances and conduct of the parties in relation to the subject matter of the letter as well as to the language of the letter."

In the instant case the correspondence is of such a nature that its meaning becomes material in determining if the conditions imposed by defendant were clear and understandable or not. If this correspondence, taken in conjunction with the notations on the check, raises no ambiguities and conveys the intent of the defendant in such manner that the plaintiff knew or should have known that the acceptance of the check was in full satisfaction of the disputed claim, then there would be no jury question. Conversely, if the correspondence was couched in language which caused uncertainty as to meaning, then there would be a question for the triers of fact.

We feel it important to include in this opinion that correspondence affecting the status of the check. The president of the defendant corporation, on November 4, 1954, wrote to the plaintiffs:

"Farina Brothers
429 Watertown Street
Newton 58, Massachusetts

Att: Ernest Farina

Re: Limestone AFB, Maine — Contract No.
DA-19-016-ENG - 3037 Job #114.

Dear Mr. Farina:

We have received information from the U. S.
Army Engineers at Limestone that our buildings
have been approved and they are now in use and
therefore, we respectfully ask you to pay us the
balance of our contract price immediately.

*This will not be a payment in full because we
added some additional material at the request of
the United States Army Engineers and in accord-
ance with their drawings for extras, which we
are asking you to claim in our behalf.* We also
have a claim against you for $360, which was our
labor cost for repairing the corner sheets damaged
by your crane operator while excavating, for the
floor of these buildings. Also, one Purlin which
you requested Mr. Hodgkins to order to replace
one which you damaged in the amount of $5.00. It
may very well be that you have insurance that
would cover this damage and I would like to have
you let me know if you have. (Emphasis sup-
plied.)

The U. S. Army Engineer on the job requested
us to caulk the buildings and this was done but
later they said they would not have had us do this
because the specifications did not call for this
work, inasmuch as our buildings were mortised at
the eaves where the wall sheets and the eave sheets
join. We had 140 hours additional work on this
at $2.00 an hour, making a total of $280.

After the Corps of U. S. Army Engineers agreed
to permit us to use the 6″ door channels, they re-
duced our contract and your contract $2100. This
was deducted from our contract but in place of

this the Corps of U. S. Army Engineers required us to use additional angle irons in each end bay on eight of these buildings. This was not in the original plans but in the modified plans finally approved by the Corps of U. S. Army Engineers. The angle irons for this work was purchased by us from the T. W. Dick Company in Gardiner, Maine, amounting to $21.70, plus freight of $2.73, and the labor on this was welding, one welder and helper, two days, at $9.00 an hour, a total of $144. *These items, except for the damage that your excavator did, should be in the form of a claim against the U. S. Army Engineers, and after having been paid you will reimburse us.* (Emphasis supplied.)

We might add also that we did extra work in putting in additional girts between the door frames and the columns but we have made no charge for that.

We appreciate your willingness to cooperate with us in bringing this matter to a final conclusion and trust you will pay us the balance on the contract and then take up the matter of the extras afterwards.

Cordially and sincerely,

SHERIDAN CORP.

John G. Marshall

a

jgm;lja

enc.

John G. Marshall

President"

Enclosed with the letter was an itemized statement for extras amounting to $813.43.

The defendant corporation, on February 11, 1955, sent the plaintiffs a letter of the following tenor:

"Farina Brothers
429 Watertown Street
Newton 58, Massachusetts

    Att: Ernest Farina

    Re: Limestone Air Base

Dear Mr. Farina:

Upon my return to the office today, the treasurer of the Sheridan Corporation has called my attention to the fact that we have received from your company sums totaling $65,451.39. This represents a payment in excess of the original contract in the amount of $2214.39.

This last payment came during my absence and during the absence of our treasurer and only recently was called to our attention. *However, we have a claim against your company for $813.43 in accordance with our letter to you of November 4, 1954. I asked you in that letter to make a claim against the U. S. Army Engineers for the amount of $280 and for the labor and materials on the last three items in that bill.* Consequently, we are deducting that amount of $813.43 and remitting to you today a check in the amount of $1400.96.

(Emphasis supplied.)

The reason that I am writing this letter now is because this is the first day that I have had an opportunity to do so since returning to *me* office and I tried to call you on the telephone this afternoon but your office reported that you were not in.

                Very truly yours,

                SHERIDAN CORP.

                John G. Marshall

                          a

jgm;lja          John G. Marshall
enc.              President"

When the defendant sent the check, the letter of transmittal referred to the letter of November 4, 1954 and for all intents and purposes incorporated by reference that letter and the terms it contained. In the letter of November 4th, the defendant corporation wrote to Farina Brothers, "This will not be a payment in full because we added some additional material at the request of the United States Army Engineers and in accordance with their drawings for extras, *which we are asking you to claim in our behalf.*" (Emphasis supplied.) Incidentally, the amount which the defendant corporation asked of the plaintiffs "to claim in our behalf" amounts to $448.43.

In analyzing the contents of letters dated November 4, 1954 and February 11, 1955, can it be said that the conditions tendered by the defendant to the plaintiffs were concise, clear and without ambiguity or were they vague and uncertain?

Some evidence of the lack of understanding of the conditions imposed by the check and letter of transmittal is found in the verbal testimony of Mr. Ernest Farina, one of the plaintiffs, and we quote, in part, his testimony:

"MR. LINNELL: When you got that letter and the check do you remember seeing the notation on the check 'in full'?

A. Yes, I do.

Q. What did you do?

A. I called up the Sheridan and, in the absence of Mr. Marshall, I spoke with Miss Austin, the treasurer of the Sheridan Corporation.

Q. What was the nature of the conversation you had with Miss Austin?

A. To explain why the check wasn't in a larger sum; in the full amount.

Q. Do you mean you asked Miss Austin to explain?

A. Yes.

Q. What explanation did you get?

A. She was instructed by Mr. Marshall that was what she was to send to my company.

Q. What did you tell Miss Austin?

A. I told her so far as I was concerned it was not to be considered payment in full. I also retained Mr. Pompeo."

The letters of November 4, 1954 and February 11, 1955, and the telephone conversation with an officer of the company, taken in conjunction with the check, present not a clear and concise presentment of conditions on the part of the defendant to the plaintiffs for the acceptance of the check but, in their ambiguity and lack of clarity, pose questionable conditions and terms, thereby presenting a factual problem as to exactly what was meant by the defendant and what was understood or should reasonably have been understood by the plaintiffs. This factual problem constituted a jury question. *Bell* v. *Doyle,* 119 Me. 383, at 387, "- - - - - accord and satisfaction is a question of fact to be submitted to the jury, - - - - unless the testimony is such that only one inference or finding can be made."

The defendant seeks to show error on the part of the presiding justice in allowing the answer to a question asked of one of the plaintiffs pertaining to his understanding of the meaning of the letter which accompanied the check. The presiding justice in allowing the answer was correct. The plaintiffs' understanding of the nature of defendant's proposal in the letter accompanying the check was relevant. *Fuller* v. *Smith, supra.* If, as here, the plaintiffs assert they did not understand that an unqualified condition was attached, it is still open to the other party to show that the language used was so clear that plaintiffs cannot reasonably deny their understanding.

The cause was properly submitted to the jury. The record discloses sufficient evidence to support the verdict. *Young v. Hornbrook, Incorporated,* 153 Me. 412.

> *Exceptions overruled.*
> *Motion for new trial denied.*

WEBBER, J. (CONCURRING OPINION)

I concur in both the opinion and the result. I would add only that if the letter accompanying the check had contained any of the language usually employed when a full and final settlement of all disputed claims is intended, I think all would agree that *Larsen* v. *Zimmerman*, 153 Me. 116, would be controlling. On the contrary, however, the covering letter creates doubt as to the writer's intention. Is it intended merely to exert pressure on the plaintiffs to make claim against the U. S. Army Engineers for and on behalf of the defendant? May it properly be inferred that if that is done, the whole matter will be open for further negotiation and adjustment and does the use of the word *"today"* in its context imply that subsequent developments may produce a different result tomorrow? Or does this letter make the intention to effectuate a full, complete and final settlement, binding under any and all conditions, so clear that a reasonable man could not construe it otherwise? In my view the correspondence only served to muddy the waters. With doubt thus created, the plaintiffs properly made inquiry as to just what was intended. The reply made by an official of defendant's company was equivocal and uninformative, whereby defendant's intention was veiled in even greater mystery. All of these factors, so completely unlike the clear and unmistakable expression of intention in *Larsen*, made this a case for determination by a jury.

DISSENTING OPINION, WILLIAMSON, C. J.

I would sustain the motion for new trial.

The following facts, in addition to those stated in the opinion of the court, seem to me of significance.

(1)   The itemized statement enclosed with defendant's letter of November 4, 1954, was in the form of a bill rendered by the defendant to the plaintiffs for six numbered items, with amounts stated totalling $813.43.

(2)   On November 8, 1954, in reply to the defendant's letter of November 4, the plaintiffs wrote the defendant denying liability on all claims, except one item for $5, and refusing to make any claim against the government.

As I read the record, the only permissible inference points to an accord and satisfaction.

First:   The $1400 check sent by the defendant to the plaintiffs with the letter of February 11, 1955, was offered only on condition that it be taken in full payment. In substance, we have here the every day situation in which the debtor deducts a disputed item from his creditor's bill and remits the balance in full settlement. The unusual feature in this case lies in the fact that the plaintiffs' claim comes from an admitted overpayment on the contract price given and received by the parties in error and first discovered by the defendant. The opportunity to withhold the disputed claim from moneys admittedly due the plaintiffs arose from this error. The application of the general principles of accord and satisfaction are not of course altered by this fact.

Second:   The condition, i.e., that the check must be taken in full payment, ought reasonably to have been understood by the plaintiffs, and hence they are bound thereby.

The plaintiffs obviously did not intend to receive the $1400 check in full payment. Mr. Farina, one of the plaintiffs, said to the Treasurer of the defendant corporation, on receiving the check, "so far as I was concerned it was not to be considered payment in full." There is in the record, how-

ever, no evidence to warrant a finding that the defendant waived the condition on which the check was sent. The conversation between Mr. Farina and the Treasurer clearly constituted no change in the position of either the plaintiffs or defendant.

The law gave the plaintiffs the choice of accepting the check on defendant's terms or of returning it. The plaintiffs chose neither permitted course, but denied the condition and cashed the check. They cannot, in my opinion, properly complain that they were bound by the condition of acceptance in full payment. See 6 Williston, Contracts §§ 1854, 55, 56 (rev. ed.) ; Corbin on Contracts §§ 1279, 80.

I am authorized to state that Mr. Justice Sullivan concurs in this dissenting opinion.