### E.S. HERRICK CO.

#### v.

### MAINE WILD BLUEBERRY CO.

Supreme Judicial Court of Maine.

Argued Dec. 7, 1995.

Decided Feb. 7, 1996.

Barry K. Mills (orally), Hale & Hamlin, Ellsworth, for Plaintiff.

Brett D. Baber (orally), Rudman & Winchell, Bangor, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, DANA, and LIPEZ, JJ.

DANA, Justice.

Maine Wild Blueberry Co. (Maine Wild) appeals and E.S. Herrick Co. (Herrick) cross-appeals from a judgment entered in the Superior Court (Hancock County, *Marsano, J.*) awarding Herrick damages for Maine Wild's breach of contract. Maine Wild contends that the court erred in determining that Herrick was not bound by an accord and satisfaction and was contractually required to negotiate the amount of the "field price" due under the 1990 contract. Both parties challenge the amount of the damage award. Because we find that Herrick was bound by an accord and satisfaction, we vacate the judgment.

At a jury-waived trial the following facts emerged. Maine Wild entered into a contract to purchase from Herrick all of Herrick's wild blueberries for the 1990 crop year. Maine Wild agreed to pay "10¢ per pound over field price."[1] The 1990 contract was substantially similar to earlier contracts between the parties that also contained references to the field price and a premium.[2] A dispute between the parties arose during the 1990 crop year regarding the meaning of the term field price and the amount Maine Wild owed Herrick following Herrick's delivery of its blueberries.

Between 1984 and the beginning of 1990, when Frederick Kneeland was the President of Maine Wild, the determination of the field price had never been a problem. When Kneeland became ill in 1990, Amr Ismail became president of Maine Wild and involved in determining the field price for the 1990 crop year. Ismail testified that after Herrick and the other growers had delivered their blueberries, Maine Wild announced that it considered 30¢ a pound to be the field price. Following a meeting between Maine Wild and its dissatisfied growers at which Maine Wild was informed about field prices as high as 40¢ a pound being paid by other buyers, Maine Wild agreed to increase its field price from 30¢ to 33¢ a pound. Maine Wild ultimately paid all of its 1990 growers, including Herrick, based on a field price of 33¢ a pound.

---

1. The contract between Maine Wild and Herrick for the 1990 crop year states:

   As agreed, Maine Wild Blueberry Company will purchase and E.S. Herrick Company will sell all of their wild blueberries for the crop year of 1990.

   Maine Wild Blueberry Company agrees to pay 10¢ per pound over field price. It is intended that this agreement shall be on going between the parties for years to come, except the purchase price shall be negotiated each year and be satisfactory to both parties.

2. Premium is an additional sum paid to certain growers in recognition of the large volume of berries delivered and as compensation for the quality of the product and the services provided. The amount of the premium and field price varied in the contracts between the parties from year to year. Unlike the field price, however, the amount of the premium was stated in the contract. In the instant case the premium of 10¢ per pound is not in dispute.

Maine Wild had initially paid Herrick for 1,240,755 pounds of blueberries based on a field price of 30¢. Early in 1991 Maine Wild advanced another 2¢ per pound and on May 1, 1991, Maine Wild sent a payment to Herrick with a cover letter stating: "[e]nclosed is a check for $12,407.55 representing final settlement for blueberries that Maine Wild purchased from you in 1990."[3] Herrick cashed the check without first telling Maine Wild it was not accepting the check in final settlement. Herrick brought suit to recover the balance owed based on a 37¢ field price.

The court concluded there was no accord and satisfaction because it found that Maine Wild had agreed that it owed Herrick 33¢ per pound and it was simply paying that amount and because Herrick had previously made it clear to Maine Wild that it did not agree that 33¢ was the field price. The court found that the 33¢ field price had been unilaterally determined rather than negotiated as the contract required and that if the field price had been negotiated it would have been 35¢ per pound. It entered a judgment that awarded Herrick damages in the amount of $24,815.10, plus interest and costs.

■■■ Accord and satisfaction is an affirmative defense, M.R.Civ.P. 8(c), and the party asserting an accord and satisfaction has the burden of showing that an accord and satisfaction has occurred by a preponderance of the evidence. *Soucier v. Wall,* 581 A.2d 422, 423 (Me.1990) (citing *Stultz Elec. Works v. Marine Hydraulic Eng'g Co.,* 484 A.2d 1008, 1010 (Me.1984)); *Bryson v. Kenney,* 430 A.2d 1102, 1104 (Me.1981) (party raising issue of accord and satisfaction bears the burden of proving that debtor tendered amount in satisfaction of particular demand and creditor accepted it as such). An accord " 'is a *contract* under which an obligee promises to accept a substituted performance in future satisfaction of the obligor's duty.' " *Stultz,* 484 A.2d at 1011 (quoting Restatement (Second) of Contracts § 281 (1981)).

■■■ "Unless it is evidenced by a clear and unambiguous writing, the existence of an accord and satisfaction is a question of fact." *Judkins Ins. Agency, Inc. v. Whitney,* 588 A.2d 298, 299 (Me.1991) (citing *Emerson v. Sweet,* 432 A.2d 784, 785 (Me.1981)). We will not disturb the trial court's factual findings unless they are clearly erroneous because they are not supported by competent evidence in the record. *McGraw v. S.D. Warren Co.,* 656 A.2d 1222, 1224 (Me.1995). "Accord and satisfaction may exist as a matter of law if 'an amount is tendered on a clear and unambiguous written condition that it be accepted in full settlement of all claims pending between the parties' and the claimant accepts payment of the amount tendered." *Emerson,* 432 A.2d at 785 (citing *Wiggin v. Sanborn,* 161 Me. 175, 178, 210 A.2d 38, 39 (1965)); *see Michaud v. Vahlsing, Inc.,* 264 A.2d 539, 541 (Me.1970) (if there is no question of parties' intent and only one finding can be made, accord and satisfaction is established as a matter of law).

■■■ We have consistently concluded that a check bearing language that states " 'full and final payment' or 'in satisfaction of all claims' creates an accord and satisfaction when cashed or deposited by the payee." *Stultz,* 484 A.2d at 1010; *see, e.g., Graffam v. Geronda,* 304 A.2d 76 (Me.1973); *Wiggin v. Sanborn,* 161 Me. 175, 210 A.2d 38 (Me.1965); *Larsen v. Zimmerman,* 153 Me. 116, 135 A.2d 270 (1957). When the condition on which the tender is made is ambiguous or there is doubt as to what the parties intended or should have reasonably understood, we have found that there is no accord and satisfaction as a matter of law. *See Emerson,* 432 A.2d at 786–87 (check endorsed made no reference to "satisfaction" of any "claim" or "finality"); *Farina v. Sheridan Corp.,* 155 Me. 234, 245, 153 A.2d 607, 614 (1959) (although check was marked "in full" exchange of correspondence between the parties raised an issue as to their mutual understanding); *Fuller v. Smith,* 107 Me. 161, 167, 77 A. 706, 709 (1910) (debtor stated in letter accompa-

---

**3.** The letter further stated:
The payments that you have received are for a field price of 33¢ per pound plus 10¢ per pound commission in accordance with the contract. During the season and after the season you made it clear to me that you no longer will sell blueberries to Maine Wild Blueberry Company. We wish you luck in your future endeavors.

nying check "all my indebtedness" but spelled out how he calculated sum tendered leaving open the inference those were the only items intended to be settled).

Although in the instant case the language "final settlement" was written in the cover letter accompanying the check, as opposed to on the check itself, we have held that an accord and satisfaction is created by cashing a check that is accompanied by a letter bearing restrictive language. *See Soucier*, 581 A.2d at 423–24 (employee's cashing a check marked "accrued vacation time/severance pay" accompanied by a letter that referred to "settlement" constituted an accord and satisfaction in wrongful discharge claim).

In analyzing language that allegedly creates an accord and satisfaction we have focused on whether such language "has provided the payee with sufficient notice of the payor's intent." *Stultz*, 484 A.2d at 1010 (citing *Graffam*, 304 A.2d at 79–80). In *Stultz* we held that the unambiguous notation of full payment was an offer to create a new contract, an accord, and that the payee assented when it endorsed and deposited the check. *Stultz*, 484 A.2d at 1011. As a result, we concluded that "there is no acceptable alternative to finding that the Defendant's terms became binding." *Id.* (citing *Graffam*, 304 A.2d at 80).

The letter in the instant case did not use the specific language that the check in *Stultz* bore, "[e]ndorse only as settlement in full all claims." It did state, however, that the check "represent[ed] final settlement for blueberries that Maine Wild purchased from [Herrick] in 1990." The language Maine Wild used is similar to the notation on the check in *Graffam*, 304 A.2d at 77, that stated "[f]ull and final payment for product received December 18, 1969." In *Graffam* we held that the condition of acceptance was clearly stated and that by cashing the check the plaintiff accepted the check on the stated condition and executed an accord and satisfaction as a matter of law, notwithstanding his effort to delete the condition. *Id.* at 80.

Maine Wild considered the check to be the final payment. Herrick's president admitted that he read the letter that included the language regarding final settlement but interpreted it as a statement made by Maine Wild not as a condition between them. He admits that he cashed the check, but that it did not occur to him that by cashing the check he was surrendering any claim under the contract. The creditor's intent is material to accord and satisfaction when the writing is ambiguous. *Emerson*, 432 A.2d at 787 (citing *Fuller*, 107 Me. at 166–67, 77 A. at 709). The language in the letter, however, was unambiguous. It represented "final settlement," and there is no exchange of correspondence of such a nature as to create doubt as to what Maine Wild intended or should reasonably have been understood by Herrick. *See Wiggin*, 161 Me. at 180, 210 A.2d at 41. Furthermore, a creditor cannot generally avoid the consequences of his exercise of dominion by a declaration that he does not assent to the condition attached by the debtor. Restatement (Second) of Contracts § 281 cmt. d (1981). "'The law gave [Herrick] the choice of accepting the check on [Maine Wild's] terms or of returning it.'" *Graffam*, 304 A.2d at 80 (quoting *Farina*, 155 Me. at 248, 153 A.2d at 615).

"The enforceability of an accord is governed by rules applicable to the enforceability of contracts in general." Restatement (Second) of Contracts § 281 cmt. d (1981). Consideration is an essential element of a valid accord and satisfaction. 1 Am.Jur.2d *Accord and Satisfaction* § 26 (1994). There was consideration for an accord and satisfaction in the instant case because the parties disputed the amount of the field price and the amount owed. *See id.* § 7 (settlement of a disputed or unliquidated claim is sufficient consideration to support an accord and satisfaction). Thus, an accord and satisfaction barred any further recovery by Herrick under the 1990 contract as a matter of law and we need not reach the other issues raised by Maine Wild and Herrick.

The entry is:

Judgment vacated. Remanded for entry of a judgment in favor of defendant.

All concurring.