STATE OF MAINE
AROOSTOOK, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-01-078

Christopher T. Snyder and Ellie Snyder )
Both of Perham, County of Aroostook )
And State of Maine )
        Plaintiffs )
)
        and )
)
Legacy Farms, Inc. of Perham, Country of )
Aroostook and State of Maine )
        Plaintiff )
v. )
)
)
Thomas Drew of Woodland, County of )
Aroostook, and State of Maine )
        Defendant )

Defendant's attorney:
Francis Bemis

Plaintiff's atty:
Jeffrey Pickering

**JUDGMENT**

DONALD L. GARBRECHT
LAW LIBRARY

NOV 25 2002

Hearing of this matter was held on November 5 and 6, 2002 in the Superior Court in Caribou, Maine. The Plaintiff Ellie Snyder appeared with counsel. The Plaintiff Christopher T. Snyder did not appear. Mrs. Snyder's counsel represented his interests those of Legacy Farms, Inc. The Defendant Thomas Drew appeared with counsel. The evidence and allegations of the parties were presented and considered and after due consideration the court issues the following judgment.

## BACKGROUND

In the fall of 1999, the Plaintiff Christopher Snyder and the Defendant Thomas Drew were acquaintances. The Defendant was then engaged in dairy farming on property that had been in his family for several generations. At that same time and although he had no prior experience with this kind of business, the Plaintiff Christopher Snyder was desirous of becoming involved in dairy farming. The two men discussed their common interest

and decided to combine their resources and their efforts to operate a dairy farm together. The Plaintiff Ellie Snyder, spouse to Christopher, was not a party to the initial discussions and agreement of the two men but nevertheless suggested to them that it might be to their advantage to conduct this dairy farming enterprise through a corporate entity. The parties decided to act on this suggestion but did not seek or obtain any professional assistance in setting up this corporation. The Plaintiff Ellie Snyder simply obtained a corporate form book and filed standard Articles of Incorporation with the Maine Secretary of State to create Legacy Farms, Inc. Thomas Drew was designated as President and Christopher Snyder was designated as Vice President. The Plaintiff Ellie Snyder was designated as Clerk of the corporation. The parties established a checking account and obtained a tax payer identification number from the Internal Revenue Service. The parties, who had not reduced their business agreement to any written form whatsoever, observed no corporate formalities beyond the point of obtaining Articles of Incorporation. They did not issue any shares of stock or adopt any bylaws or any other form of corporate governance. They did not hold regular meetings or prepare minutes to document decisions made informally. In fact, there are no corporate minutes to reflect any corporate decision-making.

According to the Defendant's un-rebutted testimony, the parties intended that their new business entity would own all of the property that the Plaintiff Christopher Snyder and the Defendant were to contribute to the start up of their corporation. Notwithstanding this however, no one ever formally transferred ownership of any property to the corporation.

As of the date of the hearing, the corporation was in an inactive status, although it is not clear that this was as the result of action taken by the Secretary of State as the result of action initiated by the Plaintiffs.

According to the Defendant's testimony, prior to engaging in any business together, the parties did sit down and take stock of what assets and liabilities each of them owned and could contribute to the start up of their business. The Plaintiff Ellie Snyder was present at this meeting and made a written list of all of these assets and all of these liabilities. At that time, the Defendant had approximately 70 head of cattle that included 35 milk-producing cows. He also had dairy farming equipment, barns for animal shelter, land for growing of cattle feed, and considerable debt. The Plaintiff Christopher Snyder had approximately 50 head of cattle of which only 3 were producing milk, a lesser quantity of equipment, no land and no debt. Neither party presented any evidence of the particular values of live stock, equipment, or land as of that date of this meeting, nor did they present any evidence of the amount of the Defendant's debt.

From the testimony presented, the court finds that the Plaintiff Christopher Snyder and the Defendant agreed to own and operate a dairy farm together.[1] They agreed that the Defendant would be responsible for the care, feeding and milking of the cows and that he would be responsible for making the decisions directly related to operating the dairy farm. The parties also agreed that the Plaintiff Christopher Snyder would be responsible

---

[1] The court finds that although the Plaintiff Ellie Snyder was Christopher's spouse, and although it appears that she was actively involved with her husband's interests, no agreement was made between she and the Defendant that would be sufficient to create recognizable rights in connection with this agreement for her.

for equipment maintenance and would tend to the growing and harvesting of the silage that would be fed to the cattle. He would also assist in general farm labor.

The court finds that the parties had agreed that they were each to make an equal contribution to the start up of this business. The court specifically finds that the Plaintiff Christopher Snyder and the Defendant did in fact make an equal contribution of value to the start up of their business. The parties agreed that the Defendant's contribution of valuable milk producing cows and his dairy equipment would be offset by his significant existing debt (which the business was to satisfy) such that the net value of the Defendant's contribution was equal to the value of the Plaintiff's limited equipment contribution and less valuable cattle.

Satisfaction of the Defendant's debt was essential to the success of the parties' dairy business because the creditors holding this debt were also the suppliers of essential goods and services without which the parties could not continue in business. These creditors would not provide their goods and services without assurance of payment of the Defendant's existing debt and therefore the parties agreed that their business would pay the Defendant's debts. This point was not disputed.

The parties thus began operation of their dairy farm as a partnership doing business as Legacy Farms, Inc.[2] The business checking account was frequently overdrawn and it soon became apparent that the dairy business could not support itself. The Defendant's

---

[2] Although the parties had agreed to utilize the corporate form to conduct their dairy farm, they essentially ignored the corporate formalities and operated their business as partners rather than as officers or directors, or even shareholders, of a corporation.

testimony suggested that this was not particularly surprising as it was a fairly common occurrence for his own cash flow to dry up when he was farming alone. At those times, he would simply sell off a cow or two in order to obtain an injection of cash. The Plaintiff Christopher Snyder was opposed to selling cows to obtain cash, although the parties' original agreement called for the Defendant to make such decisions. Nonetheless, cows were not sold and the Plaintiff Ellie Snyder began to make cash deposits from her own funds into the Legacy Farms, Inc. checking account. She testified that she would have deposited in excess of $50,000 into the dairy farm checking account.[3] From the check register, (Plaintiff's Ex. C) it appears these funds were used to pay farm-operating expenses.

The dairy farm struggled along through the winter months and into the spring of 2000. A fire in May of 2000 destroyed the barn where the cattle were sheltered and milked. Friends and neighbors generously responded to this emergency and helped build temporary shelter for the cattle and helped set up a temporary milking operation which enabled the parties to attend to the needs of their animals and to continue their business with surprisingly little disruption. For the Defendant however, it was the beginning of the end. He was growing increasingly dissatisfied with this business arrangement and expressed a desire to dissolve the business shortly thereafter. The Plaintiffs acceded to the proposed dissolution.

---

[3] These deposits appear as "loans" in Plaintiff's Ex. C. This is a characterization given them by the Plaintiff Ellie Snyder. The Defendant adamantly denies ever agreeing that they were loans or that he in anyway ever agreed to pay any of these sums back.

The parties set about to separate out their respective property interests and drew up a series of agreements to reflect their decision to end their business. These were admitted as Defendant's exhibits A, B, C, and D. They were drafted by the Plaintiff Ellie Snyder and signed by Plaintiff Christopher Snyder and the Defendant. The Plaintiff Ellie Snyder signed them also, although the exact capacity in which she signed is unclear.

By the end of September of 2000, the parties had ended their joint farming operation and, more or less along the lines of original contribution, had distributed between them all of the business equipment, livestock and land. The pending lawsuit was filed approximately one year later in September of 2001.

## DISCUSSION

The Plaintiffs' complaint sets forth a claim for $36,796.26 for monies paid to the Defendant's creditors. It also seeks $5,822.87 for money taken out of the corporation by the Defendant as a weekly draw. Finally, the complaint seeks contribution from the Defendant for one half of the $3,000 paid for accounting services in connection with the preparation and filing of corporate income tax returns. Although the Plaintiffs presented evidence in support of an unpled claim for reimbursement for monies paid into the business, which monies the Plaintiff Ellie Snyder has characterized as "loans", the pleadings do not set forth any claim for such sums. Further, at no time did the Plaintiffs seek to amend the complaint to add other or additional claims other than those set forth in the complaint. Notwithstanding a party's failure to raise an issue in the pleadings or at the pre-trial stage of litigation, an issue that is tried by express or implied consent of the parties will be treated in all respects as if it had been raised in the pleadings. *Steinberg v.*

*Elbthal* 463 A.2d 731 (Me. 1983). Because both parties presented evidence at trial pertaining to the Plaintiff Ellie Snyder's deposit of cash into the business checking account and because both counsel cross examined witnesses pertaining to this issue, the court concludes that M.R.Civ. P 15 (b) requires the court to consider the Plaintiffs' additional claim for reimbursement of these deposits.

The Defendant maintains that the original agreement called for the business to absorb his preexisting debt and therefore, he made no promise ever to repay monies paid to his creditors. Also, the Defendant maintains that in any event, the parties reached an accord and satisfaction which effectively resolved all claims which either may have against the other and that this agreement is reflected in Defendant's exhibits A, B, C and D.

The Plaintiffs allege in their complaint that the corporation Legacy Farms, Inc. paid $36,796.26 to the Defendant's creditors for pre-existing obligations (Plaintiffs' Ex. A shows these debts as well as the $5,822.87 which the Plaintiffs also claim). Both parties acknowledge that it was necessary to pay these creditors in order to assure that necessary supplies, fuel, feed, etc could be obtained in order to conduct the business. The Defendant testified that the business was to assume complete responsibility for these obligations without any residual obligation on his part to reimburse the business for having done this. He supports this contention by pointing out that because one half of his milk herd was lactating and producing milk that could be sold for cash, the business was acquiring ownership of substantial assets worth significantly more than those which the Plaintiff Christopher

Snyder was contributing because only three of his cows were producing milk . Additionally, these three plus the other 27 cattle still needed to be fed and cared for at considerable expenses. Initially at least, it would therefore be the Defendant's milk producing cows that also produced the cash to pay down the Defendant's debts. Taking these considerations into account, the parties' respective contributions were essentially equal but only if the business also assumed responsibility for the Defendant's debt. This testimony was not rebutted. The court therefore finds that the Defendant never agreed to repay debt that the business assumed and satisfied and the Plaintiffs' claims against him for these monies must be denied.

The court finds that the Defendant's defense of accord and satisfaction as reflected in Defendant's exhibits A, B, C and D support this same result and also leads the court to find in his favor on the Plaintiffs' two other claims for reimbursement of monies the Defendant took as a draw and of monies paid into the business as "loans".

Accord and satisfaction is an affirmative defense, M.R.Civ P 8 (c) and the party asserting the defense has the burden of proving it by a preponderance of the evidence. _E.S. Herrick v. Maine Wild Blueberry Co_. 670 A.2d 944,946 (Me. 1996). "An accord is a _contract_ under which an obligee promises to accept a substituted performance in future satisfaction of the obligor's duty. Unless it is evidenced by a clear and unambiguous writing, the existence of an accord and satisfaction is a question of fact." _Id at 946_ (internal citations omitted.) "The enforceability of an accord is governed by rules applicable to the enforceability of contracts in general. Consideration is an essential

element of a valid accord and satisfaction." *Id. at 947*(internal citations and quotations omitted). The court concludes that the Defendant has met his burden of proving entitlement to the affirmative defense of accord and satisfaction.

In this case, it is clear to the court that the parties were endeavoring to separate their business interests and position themselves to go forward with separate dairy farms without any remaining obligations between them. There is nothing to suggest that any of the parties contemplated anything other than a full, final and complete settlement. In the absence of any express reservation of rights, there is only one natural inference than can be drawn when one party has bargained for and accepted the other party's release of all claims arising out of a specific transaction or occurrence: implicit in the bargain of accord and satisfaction is a reciprocal release, by the party who has procured the express release, of any claims inconsistent with the settlement effected by the release. *Cyr v. Cyr* 560 A.2d 1083,1084 (Me. 1989).

Defendant's Exhibit A provides in part,

> "Whereas Christopher T. Snyder and Thomas H.B. Drew are principal shareholders of Legacy Farms, Inc. and
> Whereas *the parties wish to liquidate the corporation*, (emphasis supplied) and each pursue separate dairy interest."

From this language, the court concludes that the parties clearly intended to "liquidate" or completely dissolve the corporation and position each of them to go forward with their own farming interests.

Defendant's Exhibit B, which was signed by the parties one month later, clearly states that "the parties wish to dissolve their joint venture and separate and divide certain assets and obligations of the said venture:"

From this document the court concludes that the parties were of like mind to divide all assets and all obligations of their business venture. In paragraphs 1 and 2 of Exhibit B, the parties use language that speaks of "surrendering shares" and "giving up claims" or "surrendering claims". This language all indicates to the court that each party recognized that there may be rights to which they were entitled but they were going to forego those rights in exchange for similar concessions from the other party. This is how settlement agreements are made.

Defendant's exhibits C and D in particular reflect an intention that both the assets and liabilities of the corporation be divided between them as they prepared to go their separate ways. Defendant's exhibits C and D, also reflect that assets and liabilities are being divided between the parties. Comprehensive lists within the exhibits set forth the assets which each party is to receive and set forth the liabilities for which each party is to be responsible. As per these exhibits, some liabilities and obligations were assigned to the Plaintiffs and some were assigned to the Defendant. The exhibits reflect that the parties agreed that the Plaintiffs would take responsibility for the $12,000 note owing to First Citizens and the $14,750 obligation owing to the New Holland Corporation.

There is no reference to any obligation of the Defendant to pay back any money to the corporation for payments made to his creditors. If the Plaintiffs had a genuine

expectation that the Defendant would pay back $36,796.26, (a sum that is far greater than the other two obligations combined), to the corporation, it seems quite odd that there would be no reference to it in their agreements. Having paid in the money, surely the Plaintiffs would have been mindful of it at the time the separation agreement was being made. The court concludes that not only did the Defendant not agree to reimburse the business of the Plaintiffs for payments made on his preexisting debts but also that Defendant's exhibits A, B, C and D reflect a complete settlement agreement between the parties that incorporates and extinguishes any claim for $36, 796.26.

Similarly, it also seems quite odd that at the time the parties agreed to liquidate the corporation (See Defendant's Ex. A)the Plaintiffs never raised the question of what to do about $50,000 in unpaid "loans" to the corporation. In addition, it isn't clear to the court whether this claim is brought by the individual Plaintiffs or if it is being brought by the corporation Legacy Farms, Inc. If the claim is brought by the Plaintiffs one has to wonder how they wound up with the right to pursue a corporate cause of action. If the claim is brought by the corporation, one has to wonder how it survived the agreement to liquidate set forth in exhibit A. In either event, the Plaintiffs fail to set forth a persuasive claim of entitlement to these monies under law.

An accord and satisfaction is a contract and therefore governed by contract law. It is black letter contract law that a court does not consider the adequacy of the consideration that is involved in the contract but only the legal sufficiency of that consideration. Consideration is legally sufficient if it has some value. In an arm's length business

transaction such as the one before the court, it is not for the court to say which party has received the greater value or made the better settlement bargain. Neither party presented any evidence of property values at the commencement of their business relationship nor did they present any evidence of property values at its termination. On the basis of the evidence presented, the court has no way of knowing for example, if the milk cows taken back by the Plaintiffs had been bred and had therefore become more valuable milk producing cows or if the cows retained by the Defendant were out of their lactation cycle and had therefore become less valuable. The court concludes that the Plaintiff has failed to establish its claim for reimbursement of $50,000 in "loans" over the Defendant's claim of accord and satisfaction and finds for the Defendant.

Similarly, the court concludes that whatever validity there might have been in a claim for the Defendant's drawing out of $5,822.87 was extinguished by the settlement agreements reflected in these same exhibits.

Finally, although the Plaintiffs included in their complaint a claim for contribution of $1,500 towards the accountant's fees for corporate tax return preparation, no evidence was presented in support of this claim and accordingly, the court finds for the Defendant on this claim as well.

Judgment is therefore entered for the Defendant on all claims set forth in Plaintiff's complaint with costs; the Defendant's counterclaim is dismissed.[4]

---

[4] The Defendant had filed a counterclaim in this action seeking an accounting. During closing argument, Defendant urged the court simply to deny the Plaintiff's complaint and leave the parties in their respective

Pursuant to M.R.Civ. P. 79(a), the clerk shall incorporate this judgment in the docket by reference.

Date: 11/13/02

_____
JUSTICE, SUPERIOR COURT

---

positions. As this is the ultimate result reached, the court concludes that the Defendant has abandoned his claim seeking an accounting and it is therefore dismissed.