STATE OF MAINE                                    BUSINESS AND CONSUMER COURT

Cumberland, ss.                                          Docket No. BCD-CV-11-41
                                            AMH- CUM- 3/16/2012

VITORINO AMERICA
individually and on behalf of
SUNSPRAY CONDOMINIUM ASSOCIATION

                        Plaintiff

            v.

ROBERT YAMARTINO et als.

                        Defendants

### ORDER ON DEFENDANTS' MOTION TO DISMISS

Before the court is the Motion to Dismiss filed pursuant to M.R. Civ. P. 12(b)(6) by

Defendants Robert Yamartino, Robert Parent, Roger Smith, Reno Levesque, Michael Molloy,

and Sunspray Condominium Association, in response to the Verified Amended Complaint filed

against them by Plaintiff Vitorino America, individually and on behalf of Sunspray

Condominium Association.

The motion seeks dismissal of all of Plaintiff's claims, which fall into two general

categories.

One set of claims seeks relief for what Plaintiff describes as an "intentional failure" on

the part of Defendants to enforce a condominium association rule prohibiting smoking ("the

smoking ban") anywhere in the Sunspray condominium complex in which Plaintiff owns a unit.

There is no allegation that the alleged failure to enforce the smoking ban has caused

cognizable, actionable harm (meaning in this context physical illness or injury) to Plaintiff or

anyone else.   Whether or not and how to enforce a smoking ban is a discretionary

determination falling well within the prerogative of the Defendant Association and its board of

1

directors under the business judgment rule, and is not prescribed by any provision of applicable statute, or the Sunspray Declaration or Association bylaws.

Count XI of the Amended Complaint makes it clear that the Plaintiff seeks a mandatory injunction dictating how the Association and its board must enforce the smoking ban. The award of injunctive relief is always discretionary, meaning that injunctive relief can be withheld even if a plaintiff proves all the elements of an equitable claim. Mandatory injunctions are disfavored in comparison to prohibitory injunctions, and a mandatory injunction dictating how to enforce a smoking ban would ensnarl the court in the day-to-day operations of the Sunspray condominium to an inappropriate and unworkable degree. For that practical reason and based on the more detailed analysis set forth hereinafter, Plaintiff's smoking ban claims will be dismissed.

The Plaintiff's other category of claims, however, has to do with the procedures for election of directors to the condominium association's board of directors. Because of the integral significance of valid elections to the proper governance of a condominium association, and because applicable provisions of law, as well as portions of the condominium declaration and association bylaws, do impose requirements regarding the conduct of elections, the court declines to dismiss most of the Plaintiff's election-based claims on a Rule 12(b)(6) motion, for reasons also explained in detail below.

## BACKGROUND

The following factual summary is based on the allegations of the Plaintiff's Verified Amended Complaint, which must be taken as true for purposes of the Defendants' Rule 12(b)(6) motion to dismiss:[1]

---

[1] The Defendants dispute many or most of the Plaintiff's factual allegations. They deny that they have been unresponsive to Plaintiff's concerns. They assert that there have been substantial efforts to enforce the smoking ban, but enforcement to the extent sought by the Plaintiff has already proved unduly

2

Plaintiff Vitorino America owns a condominium unit at the Sunspray condominium complex in Old Orchard Beach. As a unit owner, he is a voting member of the Sunspray Condominium Association, which is in overall charge of operating the condominium complex.[2] His amended complaint is against the Association and five named individuals. Four of the individual Defendants, Robert Yamartino, Roger Smith, Robert Parent and Reno Levesque, are unit owners and members of the Board of Directors. The fifth individual Defendant, Michael Molloy, is a unit owner and was chair of the nominating committee appointed for the July 2011 election at issue in the case.

In August of 2009, a ban on smoking in all common areas went into effect at the Sunspray condominium complex, and in February of 2010, the ban was expanded to prohibit smoking anywhere within the complex. The total ban was instituted because the design and configuration of the Sunspray condominium complex is such that smoke in one condominium unit, as well as in the common areas, migrates into other units. Plaintiff claims that enforcement of the smoking ban at Sunspray has been ineffectual and lax. Plaintiff America cannot go to or from his unit without encountering exhaust air from another unit in which tobacco is being smoked in violation of the smoking ban. He states that the named individual Defendant officers and directors have intentionally failed to enforce the smoking ban.

In July of 2011, there was an election to fill three open seats on the Association's board of directors at Sunspray. A nominating committee of two owners as required by the Association by-laws, was appointed by the board of directors. This committee was comprised

expensive and divisive. They assert that the September 3 election corrected any shortcomings in the July 2011 election, and deny any wrongdoing in either election. In essence, their position is that Plaintiff has brought issues that ought to be handled within the Association into the courthouse because he cannot get his way. As explained herein, the court cannot consider the Defendants' position on the merits in addressing their Rule 12(b)(6) motion to dismiss without converting the motion into one for summary judgment, which the court declines to do.

[2] Although the Verified Amended Complaint does not say so, Defendants say Plaintiff America also is a member of the Board of Directors of the Association, along with all of the individual Defendants except Defendant Molloy.

3

of Michael Molloy and Jessica Healey. Their duties included notifying the members of the election, tallying votes at the general election and collecting and counting absentee ballots.

The practice of previous nominating committees was to circulate a letter advising Association members of declared candidates for election to the Board and soliciting candidates. However, the nominating committee for the July 2011 election failed to circulate such a letter. Four candidates ran for the three open seats, but two of the four--Jessica Healey and Norman Barry, both of whom oppose the smoking ban—were never properly nominated. The name of candidate Antonio Salvador, who supports the smoking ban, was not listed on absentee ballots. The three candidates with the most votes were Jessica Healey, Norman Barry and Defendant Robert Parent.

After Plaintiff America and others objected to these irregularities, Defendant Yamartino, as president of the Board of Directors, sent a letter to unit owners in August 2011 declaring a "special meeting" on September 3, 2011, essentially to re-do the election. The Sunspray Association bylaws require elections for directors to be held at the annual meeting, which was July 9, 2011.

No new nominating committee was appointed with respect to the election scheduled for September 3, 2011. At the special meeting, Healey and Barry were nominated on the day of the election. Additionally two more candidates were nominated on the day of the election: August Favazza and Joe Leandro. Plaintiff objected to the counting of absentee ballots, because they did not include Favazza and Leandro's names. His objections were unheeded and the election process was declared valid, despite the absence of a quorum of 50% of the Association members as required by the bylaws. Candidates Healey, Barry and Parent again received the highest number of votes.

4

Plaintiff contends that the September election process, like the July election process, was conducted by the individual Defendants in bad faith, because some of the individual Defendants oppose the smoking ban and none of them is willing to enforce it as it should be enforced.

## DISCUSSION

### 1. Standard of Review

A motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) "tests the legal sufficiency of the complaint and, on such a challenge, the material allegations of the complaint must be taken as admitted." *Shaw v. S. Aroostook Comm. Sch. Dist.*, 683 A.2d 502, 503 (Me. 1996) (quotation marks omitted). When reviewing a motion to dismiss, this court examines "the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* A dismissal under M.R. Civ. P. 12(b)(6) will be granted only "when it appears beyond a doubt that the plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *Id.* (quotation marks omitted). *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . .") (alteration in original) (citations omitted).

In connection with their motion to dismiss, Defendants have based their arguments on extensive material outside the pleadings. When materials outside the pleadings are incorporated or referred to in a Rule 12(b)(6) motion, the court must decide whether to consider or exclude the additional materials, and if they are considered, the motion to dismiss is ordinarily converted into a motion for summary judgment. *See Beaucage v. City of Rockland*,

5

2000 ME 184, ¶5, 760 A.2d 1054, 1056; *In re Magro*, 655 A.2d 341, 342 (Me. 1995). *See also* M.R. Civ. P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment . . . .").

However, the Law Court has recognized an exception to this general rule, covering three types of material outside the pleadings: "[O]fficial public documents, documents that are central to the plaintiff's claim, and documents referred to in the complaint [can be considered] without converting a motion to dismiss into a motion for a summary judgment when the authenticity of such documents is not challenged." *See Moody v. State Liquor and Lottery Commission*, 2004 ME 20, ¶ 10, 843 A.2d 43, 48. The focus of these exceptions is on documents relevant to the *plaintiff's* position ("central to the plaintiff's claim", "referred to in the complaint"), consistent with the principle that a Rule 12(b)(6) motion requires the complaint to which it is directed to be viewed in a light most favorable to the plaintiff.

Much of the material submitted by the Defendants falls outside the three types of extrinsic material that can be considered without converting the motion. The court elects not to convert the motion—indeed, to do so would be difficult because there are no statements of material facts before the court and the parties have not framed their arguments in summary judgment terms. Thus, the court is not going to consider extrinsic material other than the Declaration and Bylaws, both of which are "central" to the Plaintiff's claims and also referred to in the Verified Amended Complaint. Copies were attached as exhibits to the original complaint, and are referred to in the original and Amended Complaint. The court will also consider the Association's rules and regulations, which are also referred to in the Amended Complaint.

Thus, the question before the court is whether the Plaintiff's various claims are cognizable under the law in light of the Declarations and Bylaws, not whether they are meritorious or can withstand summary judgment.

## 2. The Threshold Derivative Issue

Plaintiff America asserts 13 counts against the Defendants: breach of fiduciary duty (Counts I-II), violations of the Maine Nonprofit Corporation Act (Counts III-IV), violations of the Maine Condominium Act (Counts V-VI), breach of contract (Counts VII-VIII), intentional misrepresentation (Count IX), negligence (Count X), injunctive relief (Count XI-XII), and the appointment of a receiver (Count XIII).

His amended complaint asserts that all of his claims are brought individually and derivatively. The Defendants deny that he has any ground on which to bring a derivative claim under either the Maine Condominium Act, 33 M.R.S. §§1601-101 to 1601-118 (2011), or the Maine Nonprofit Corporation Act 13-B M.R.S. §§ 101-1406 (2011).[3] Because the issue whether the law permits the Plaintiff to sue derivatively cuts across all of his claims, it needs to be addressed initially.

The Maine Business Corporation Act (MBCA) explicitly permits shareholders of for-profit corporations to bring derivative actions, meaning actions in which the claimed harm or loss is to the corporation rather than to the shareholder. *See* 13-C M.R.S. §§ 751 *et seq.* (derivative action provisions of the Maine Business Corporation Act). "In a shareholder derivative action, a shareholder brings an action on behalf of the corporation that seeks to recover damages from the other stockholders or corporate management for fraud, breach of fiduciary duty, or a breach of the duty of good faith and fair dealing." *Voisine v. Berube*, 2011

---

[3] In their reply memorandum, the Defendants suggest that Plaintiff has conceded in his Objection that he is not pursuing derivative claims. The court does not interpret Plaintiff's Objection to withdraw his derivative claims—rather his Objection says that, should the court conclude that he cannot assert any derivative claim, he "would then argue" that he has suffered a particularized injury.

ME 137, ¶ 4, 2011 Me. LEXIS 134. In *Forbes v. Wells Beach Casino, Inc.*, the Maine Law Court said:

> The derivative action is distinguished from an individual's action which is brought by a stockholder for a loss separate and distinct from that suffered by the other stockholders. The right of a stockholder to sue on behalf of a corporation to protect or restore the assets of the corporation from *ultra vires* actions and other acts of mismanagement developed in equity. In theory the action is one to protect the corporation itself against acts from which its management is unwilling or unable to protect it. The wrong complained of is one to the corporation and the shareholder is a nominal plaintiff.

307 A.2d 210, 221-22 (Me. 1973).

A Maine condominium association is governed by the Maine Condominium Act (MCA), 33 M.R.S. §§ 1601-101 *et seq.*, section 1603-101 of which provides that such associations are to be organized under the Maine Nonprofit Corporation Act (MNCA). 13-B M.R.S. §§ 101 *et seq.*, not the MBCA. Unlike the MBCA, its counterpart for for-profit corporations, the MNCA does not include provisions authorizing shareholder derivative actions. The omission may be deliberate, because the model act on which it is based, the Model Nonprofit Corporation Act, allows for derivative suits brought by "any member of members having five percent or more of the voting power or by fifty members, whichever is less." Model Nonprofit Corporation Act § 6.30(a)(i).

However, in a section titled "Defense of *Ultra Vires*", the MNCA does allow members to bring claims against the corporation and directors or officers to enjoin unauthorized acts or acts in excess of authority. *See* 13-B M.R.S. § 203(1)(A) ("proceeding by a member or a director against the corporation to enjoin the doing or continuation of unauthorized acts"); *id.* § 203(1)(B) ("proceeding by the corporation, whether acting directly or through . . . members in a representative suit, against the officers or directors of the corporation for exceeding their authority"). The proviso for "representative suit[s]," coupled with the omission of the Model

8

Act derivative provisions, argues against implying shareholder derivative action provisions into the Maine Nonprofit Corporation Act.

The Maine Condominium Act provides: "If a declarant or any other person subject to this Act fails to comply with any provision hereof or any provision of the declaration or bylaws, any person or class of persons adversely affected by that failure has a claim for appropriate relief." 33 M.R.S. § 1604-116 (emphasis added)[4]. While not phrased in derivative terms, this provision on its face authorizes a condominium unit owner to bring an action against "any . . . person subject to this Act" if the claim is based on a failure to comply with the Act or the declaration or the bylaws." In requiring that the claimant be "adversely affected by" the alleged failure to comply, the MCA imports a particularized standing requirement that is absent from the MNCA provision permitting "representative suit[s]" by members on behalf of the corporation against officers or directors. *Compare* 13-B M.R.S. § 203(1)(B) *with* 33 M.R.S. § 1604-116.

The Sunspray Declaration includes a provision as follows: "An aggrieved unit owner shall have a right of action against the Association for failure to comply with or to enforce the Declaration, the By-Laws, any rules and regulations duly adopted or any requirements imposed by the Act." Complaint Exhibit A (Declaration), sec. 11, at 11. The Declaration cannot confer standing to bring a court action in the absence of a justiciable controversy, so the reference to "aggrieved unit owner", like the reference to "persons adversely affected" in the MCA, has to be construed to require particularized injury, meaning that the aggrieved owner must allege and if necessary, establish, that he or she has suffered particularized injury as a result of the acts or omissions at issue. In this case, the Plaintiff must allege and, if necessary, establish that the

---

[4] The MCA also provides that "every contract or duty governed by this Act imposes an obligation of good faith in its performance and enactment," 33 M.R.S § 1601-113, and that "any right or obligation declared by this act is enforceable by judicial proceeding." *id.* §1601-114.

9

Defendants' alleged failure to enforce the smoking ban has "operated prejudicially and directly upon [the Plaintiff's] property, pecuniary or personal rights." *Nelson v. Bayroot, LLC*, 2008 ME 91, ¶ 10, 953 A.2d 378, 382.

Another section of the MCA provides for other bodies of law to supplement the provisions of the MCA and the MNCA:

> The principles of law and equity, including the law of corporations and unincorporated associations, the law of real property and the law relative to capacity to contract, principal and agent, eminent domain, estoppel, fraud, misrepresentation, duress, coercion, mistake, receivership, substantial performance or other validated or invalidating cause supplement the provisions of this Act, except to the extent inconsistent with this Act.

33 M.R.S. § 1601-108.

To summarize, the Plaintiff does not have the right to bring a "shareholder derivative action" *per se* under the Maine Condominium Act and the Maine Nonprofit Corporation Act, because neither act provides for such a remedy (and the court declines to imply it into either statute).[5] On the other hand, the MNCA explicitly authorizes actions by members in a representative capacity, at least in some contexts, and the MCA and the Declaration can be interpreted to authorize claims by members who are "adversely affected" and/or "aggrieved."

In light of this framework, the inquiry turns to the counts of the Plaintiff's amended complaint and focuses on whether each of them states a claim

3. **The Counts of Plaintiff's Amended Complaint**

As discussed initially, Plaintiff's substantive claims lie in two categories. Counts I, III, V, VII and X all relate to the smoking ban. Counts II, IV, VI, VIII and IX relate to the elections. Counts XI, XII and XII all relate to remedies for the causes of action pleaded in previous counts, and do not purport to state independent, freestanding causes of action.

---

[5] Because the Plaintiff lacks a legal basis for commencing a "shareholder derivative action" *per se*, it is unnecessary to address the Defendants' argument that he has failed to comply with the procedural requirements for maintaining that type of action, *see* M.R. Civ. P. 23A.

10

The Smoking Ban Counts

A crucial aspect of the Amended Complaint is that it does not allege that the asserted failure to enforce the smoking ban has caused harm—at least legally cognizable injury—to the Plaintiff individually. The reason why this point is crucial is that condominium unit owners clearly do have viable causes of action under a variety of theories if they suffer harm or injury that gives rise to a claim. A unit owner or invitee who slips and falls in a negligently maintained common area can bring a negligence claim against the condominium association responsible for common area maintenance, for example.

The allegation in the Amended Complaint that comes closest to alleging that the failure to enforce the smoking ban has had any direct, particularized impact on Plaintiff individually is in paragraph 17, which asserts that "Plaintiff cannot enter or leave his unit without passing the exhaust of a unit in which tobacco is being smoked in violation of the Smoking Ban." This assertion, even if true, does not give rise to any cause of action because there is no allegation of a legally cognizable injury sufficient to support a claim. Accordingly, his smoking ban claims have to be analyzed solely in terms whether they state claims in a representative capacity.

*Count I—Breach of Fiduciary Duty:* Plaintiff's breach of fiduciary duty claim[6] based on the smoking ban fails as to both the individual Defendants and the Association Defendant. It fails as to the Association because the Plaintiff has not alleged a cognizable individual claim, as

---

[6] A claim for breach of fiduciary duty in the corporate context requires proof that a defendant corporate director: 1) did not "act with that degree of diligence, care and skill which ordinarily prudent persons would exercise under similar circumstances in like positions"; 2) did not "discharge the duties affecting their relationship in good faith with a view to furthering the interests of one another as to the matters within the scope of the relationship"; 3) "disclose[d or withheld] relevant information affecting the status and affairs of the relationship"; or 4) "use[d] their position, influence or knowledge respecting the affairs and organization that are subject to the relationship to gain any special privilege or advantage over the other person or persons involved in the relationship." *Rosenthal v. Rosenthal,* 543 A.2d 348, 352 (Me. 1988).

11

noted above, and because his representative claim must be *on behalf of* the Association, not against it.

Count I fails to state a claim as to the individual Defendants for two reasons. First, nothing in the declarations or bylaws, or in either the MCA or the MNCA establishes a duty on the part of any individual unit owner, officer or director to act so as to enforce the smoking ban. If there is a duty to cause the ban to be enforced, it lies with the entire board of directors of the Association, but the Plaintiff has not named the board of directors, either as an entity or by naming all of its individual members solely in their capacity as board members. In other words, Plaintiff cannot selectively sue individual board members with regard to the smoking ban because none of them has any authority or duty as an individual unit owner or board member, to do anything about the smoking ban.

A separate ground for dismissing Plaintiff's claims against the individual Defendants is the "business judgment rule." Even had the Plaintiff named all of the Association's officers and directors as defendants, his breach of fiduciary duty as to the smoking ban fails in the face of the business judgment rule. Like the law regarding the fiduciary duty of officers and directors, the "business judgment rule" is an integral element of "the law of corporations" that is made applicable to this case by virtue of section 1601-108 of the Maine Condominium Act.

The "business judgment rule" traditionally applies to business corporations, but it is also the standard under which decisions of the officers and directors of any nonprofit corporation board, including but not limited to condominium association, are to be judged.[7] Under the business judgment rule, "business decisions made by directors of a corporation are

---

[7] The question whether the business judgment rule applies to the actions of condominium association directors appears to be an open question in Maine. Elsewhere, courts have adopted the business judgment rule as applicable to condominium association officers and directors. *See Oberbillig v. W. Grand Towers Condo. Ass'n,* 807 N.W.2d 143, 155 and cases cited therein. Given that the officers and directors of condominium associations and other not-for-profit corporations are usually volunteers, there are compelling reasons to afford their acts and omissions as officers and directors at least the same protection as that afforded to directors of business corporations, if not more protection.

12

not subject to judicial review, unless they are the result of fraud or bad faith." *Shostak v. Shostak*, 2004 ME 75, ¶ 22, 851 A.2d 515 (citing *Rosenthal v. Rosenthal*, 543 A.2d 34, 353 (Me. 1988)). In some instances, application of the business judgment rule must await development of the facts, and should not result in dismissal of claims on the face of the pleadings. *See, e.g., In re Southeast Banking Corp.*, 827 F. Supp. 742, 754-55 (S.D. Fla.1993), *rev'd in part on other grounds*, 69 F.3d 1539 (11th Cir.1995) ("[T]he fact-based Business Judgment Rule defense should not be considered on a Motion to Dismiss") (citations omitted)).

This case, however, is different. The Plaintiff's breach of fiduciary duty claim fails because a board's discretionary determinations regarding whether and how to enforce a smoking ban is simply not a subject on which a court is going to police a condominium board, at least in the absence of legally cognizable harm to a person, none of which is alleged in the Amended Complaint. The fact that some unit owners want the smoking ban enforced in particular ways while others do not does not justify court intervention.

Perhaps in an effort to avoid application of the business judgment rule, Plaintiff in his Amended Complaint has made references to bad faith, essentially to the effect that some or all of the individual Defendants are acting in bad faith because they do not agree with the smoking ban and therefore do not want to enforce it. Plaintiff's allegations, even if true, do not constitute bad faith sufficient to overcome the business judgment rule. A condominium association director's opposition to enforcing a smoking ban, or opposition to a smoking ban, is simply not bad faith.[8]

This is not to say that the Plaintiff or any other Sunspray unit owner lack any remedy for actual physical injury or illness resulting from tobacco smoke. Were a unit owner to suffer

---

[8] Defendant asserts and Plaintiff agrees that Defendant Molloy was only involved in the 2011 elections as a member of the nominating committee and therefore has nothing to do with the enforcement or lack thereof of the smoking ban. Plaintiff concedes this point and has indicated that he intends not to pursue the smoking ban causes of actions against Defendant Molloy.

13

cognizable personal injury as a result of smoke—for example, were migrant second-hand tobacco smoke causing a unit owner to suffer physical illness or harm, he or she might well be able to assert a claim against the smoker and conceivably the Association, but it would be an individual claim, not a representative claim. Plaintiff has not alleged anything of that nature.

For these reasons, Defendants' motion will be granted as to Count I.

*Count III—Violation of the Maine Condominium Act:* In Count III, Plaintiff asserts that the Defendants' failure to enforce the smoking ban violates the duty of good faith imposed by the Maine Condominium Act. *See* 33 M.R.S. § 1601-113. As noted above, the MCA confers a right of action as follows: "If a declarant or any other person subject to this Act fails to comply with any provision hereof or any provision of the declaration or bylaws, any person or class of persons adversely affected by that failure has a claim for appropriate relief." 33 M.R.S. § 1604-116 (emphasis added).

For several reasons, Plaintiff's claim under Count III is legally insufficient. Although the Declaration does give an "aggrieved unit owner" a right of action against the Association for failing to enforce a rule or regulation, nothing in the Declaration (and nothing in the applicable statutes or the Association bylaws) imposes a duty on the Association to enforce the rules and regulations. Plaintiff's assertions of lack of "good faith" do not avail him, if there is no duty. Also, Plaintiff has not shown that the failure to enforce the smoking ban "adversely affected" him in the manner that the court interprets the MCA to require. As noted above, this court interprets the term "adversely affected" as used in section 1604-116 to import a standing requirement, meaning that the Plaintiff must allege and establish particularized injury, which he has not done—having to walk by an air exhaust in going to or from his unit is not enough.[9]

---

[9] The Amended Complaint does not specifically invoke the Declaration provision that "[a]n aggrieved unit owner shall have a right of action against the Association for failure to comply with or to enforce the Declaration, the By-Laws, any rules and regulations duly adopted or any requirements imposed by

14

Third, the business judgment rule applies to actions against directors under the MCA, just as it applies to the fiduciary duty claims.

Count III will be dismissed.

*Count V—Violation of the Maine Nonprofit Corporation Act:* Count V asserts that the individual Defendants, as officers and/or directors of the Association, are liable under sections 717 and 720 of the Maine Nonprofit Corporation Act for "intentionally failing to enforce the duly enacted Smoking Ban and the Governing Documents" (meaning the Declarations and Bylaws). As noted above, provisions of the MNCA authorize members to sue the corporation "to enjoin the doing or continuation of unauthorized acts," and also authorize representative suits by members "against the officers or directors of the corporation for exceeding their authority." 13-B M.R.S. § 203(1)(A)-(B). Failing to enforce a smoking ban is neither an "unauthorized act" nor an act in excess of authority. Nothing in the Declarations or Bylaws imposes a duty on the Association officers and directors to enforce the smoking ban, or even to have a smoking ban. Moreover, the business judgment rule analysis applicable to Count I also applies here.

Count V of the Amended Complaint will also be dismissed.

*Count VII—Breach of Contract:* Count VII asserts that the rules and regulations of the Association comprise an enforceable contract, and that the Defendants' failure to enforce the smoking ban is a breach of the contract. Here he presumably would be proceeding under the provision of the Declaration providing "[a]n aggrieved unit owner . . . a right of action against the Association for failure to comply with or to enforce the Declaration, the By-Laws, any rules and regulations duly adopted or any requirements imposed by the Act." Complaint Exhibit A

---

the Act." Complaint Exhibit A (Declaration), sec. 11, at 11. However, the court interprets the term "aggrieved" to impose a requirement of particularized injury, so the absence of any allegation of particularized injury would defeat any claim under that provision.

15

(Declaration), sec. 11, at 11. The absence of particularized injury due to the alleged breach means that Plaintiff is not an "aggrieved unit owner" for purposes of this provision. Plaintiff has no individual or direct claim.

As to a representative claim, there is no such cause of action as a representative claim by a condominium unit owner for breach of contract.

As to both individual and representative claims under this theory, the absence of anything in the Declaration imposing a duty on the Association to take any particular enforcement action, coupled with the protection of the business judgment rule, would likely preclude relief in the form of a mandatory injunction compelling enforcement.

Count VII will be dismissed.

*Count X: Negligence* As noted above, because the Amended Complaint contains no allegations of particularized, cognizable harm to Plaintiff resulting from the alleged failure to enforce the smoking ban, Plaintiff's smoking ban claims are cognizable only to the extent he purports to be bringing them in a representative capacity. The court has not identified any basis in law under which the Plaintiff can maintain a representative or derivative negligence claim. In addition and in the alternative, as Defendants point out, the type of "harm" the Plaintiff does allege, even if were particular to him, might well cause his negligence claim to fail under the "economic loss" doctrine. *See Oceanside at Pine Point Condominium Owners Assoc. v. Peachtree Doors, Inc.*, 659 A.2d 267, 270 n.4 (Me. 1995). Thus, Plaintiff's negligence claim in Count X must be dismissed because he has not alleged any cognizable harm as a result of the alleged negligent failure to enforce.

Count X will be dismissed.

16

<u>The Election Counts</u>

As to the election claims, the analysis is different. Whereas the applicable statutes, the Declaration and the bylaws are silent on whether and how the Association's board is to enforce a smoking ban, they are not silent on the conduct of elections. Also, as noted at the outset, the election claims relate directly to governance of the Association, and few responsibilities of the Association's Board are more important than properly conducting Board elections. Moreover, the business judgment rule does not shield the conduct of condominium association elections to the extent it does enforcing a smoking ban. The Association board has wide latitude on enforcing the ban, but not such latitude in conducting board elections.

As explained below, Plaintiff's allegations plainly are sufficient for purposes of at least two of his election-related counts to state claims for relief, although it must be emphasized that those allegations have yet to be proved. The court's previously noted decision not to convert their Rule 12(b)(6) motion into a motion for summary judgment means that the extrinsic materials the Defendants have submitted in defense of the conduct of the elections will have to be considered at a later time.

*Counts II and VI—Breach of Fiduciary Duty and Violation of the MNCA:* The counts of the complaint that seem most clearly viable are the claim in Count II for breach of fiduciary duty and that in Count VI under the Maine Nonprofit Corporation Act.

As to Count II, it would indeed be a breach of fiduciary duty for officers and directors to manipulate a board election to bring about a desired outcome. It would be bad faith for purposes of the business judgment rule for an officer or director who was opposed to enforcing the smoking ban to manipulate the election so as to cause like-minded unit owners to be elected who would not have been elected had the election been conducted properly. (Again, the court is by no means declaring the Plaintiff's allegations of manipulation valid, and is only deciding that

17

they cannot be dismissed on their face, without any further development of underlying facts and circumstances).

As to Count VI, the Plaintiff's claims as to the Association and the individual Defendants clearly are pleaded to be within the two exceptions in the MNCA to the general rule shielding corporate acts and omissions from challenge on *ultra vires* grounds: he is bringing an action against the Association to enjoin the continuation of what he claims to be unauthorized acts—namely the service of directors alleged to have been improperly elected; he is bringing this action against individual officers and directors for acts "exceeding their authority." *See* 13-B M.R.S. § 203(1)(A)-(B).

The Amended Complaint does state a claim in Count II and Count VI and the Defendant's motion is denied, except as to the Association and Mr. Molloy with respect to Count II because the court is not persuaded that, as a matter of law, there is any set of facts under which either the Association (as opposed to the officers and directors of the Association) or Mr. Molloy could be deemed to have breached any fiduciary duty to the Plaintiff or to unit members. Count VI is also dismissed as to Mr. Molloy because he is not alleged to have been an officer or director.

*Counts IV and VIII: Violation of the MCA and Breach of Contract:* The reason why the claims in Counts IV and VIII are less clearly viable for purposes of a Rule 12(b)(6) motion is that, as discussed previously, both the MCA and the Declaration impose standing requirements of particularized injury by limiting the right of action to unit owners "adversely affected" and "aggrieved." The parties have not briefed the issue whether an improperly conducted board of directors election "adversely affect[s]" and/or "aggrieve[s]" every unit owner in a way that failing to enforce a smoking ban does not, so as to give any unit owner a viable cause of action. The court will let Counts IV and VIII stand, except as to Mr. Molloy.

18

*Count IX: Intentional Misrepresentation:*   Count IX will be dismissed because, like the negligence claim in Count X, Plaintiff has not alleged or sufficiently established particularized harm.  What he claims to be misrepresentations appear to have been made generally, not just to him.  The essential element of reliance also is lacking on the face of the Amended Complaint because Plaintiff was not misled as a result of the asserted misrepresentation.

The Remedies Counts:  *Counts XI, XII and XIII:*

The remaining three counts of the Amended Complaint, as previously noted, do not allege freestanding, independent causes of action.

Count XI seeks injunctive relief in the nature of a mandatory injunction compelling the Defendants to enforce the smoking ban.  That count must go the way of the Plaintiff's smoking ban claims and is dismissed.

Count XII seeks injunctive relief as to the elections.  Clearly, injunctive relief could be awarded if Plaintiff prevails on any of the election claims that the court has decided survive the Defendants' Rule 12(b)(6) motion.  Because injunctive relief is not an independent cause of action, however, Count XII will be dismissed on the understanding that injunctive relief, mandatory or prohibitory, may be awarded if Plaintiff succeeds on the merits of any of his surviving election claims.

Count XIII, seeking appointment of a receiver, is somewhat of a hybrid between a cause of action and a pure remedy.  In practical terms, even if Plaintiff prevails on his election claims and the court decides to award relief, this court is likely to try injunctive relief before appointing any outside party to manage the affairs of the Association.  Moreover, a receiver usually takes over day-to-day financial management.  If this court appoints an outsider to supervise elections, which essentially is what the Plaintiff would have a receiver do, the outsider would likely be designated as a master rather than a receiver.  For these reasons,

19

Count XIII is also dismissed, but on the understanding that the court retains authority to appoint an outside party to supervise an election (but only if the Plaintiff prevails and only if such a step is shown to be necessary and appropriate).

## CONCLUSION

For the reasons stated, it is hereby ORDERED as follows:

1. Defendants' Motion to Dismiss the Verified Amended Complaint is hereby granted in part and otherwise denied.

2. Counts I, III, V, VII, IX, X, XI, XII and XIII of the Verified Amended Complaint are hereby dismissed in their entirety.

3. Counts II, IV, VI and VIII of the Verified Amended Complaint are hereby dismissed as to Defendant Molloy.

4. Count II of the Verified Amended Complaint is dismissed as to the Defendant Association.

5. The motion to dismiss Counts IV, VI and VIII is denied as to all Defendants other than Defendant Molloy.

6. The motion to dismiss Count II is denied as to all individual Defendants other than Defendant Molloy.

Pursuant to M.R. Civ. P. 79(a), the clerk is hereby directed to incorporate this Order by reference in the docket.

Dated March 16, 2012

A. M. Horton
Justice, Business and Consumer Court

Entered on the Docket: 3.19.12
Copies sent via Mail ___ Electronically ✓

20

STATE OF MAINE
CUMBERLAND, ss.

BUSINESS AND CONSUMER DOCKET
Location: Portland

VITORINO AMERICA
individually and on behalf of
SUNSPRAY CONDOMINIUM ASSOCIATION

Plaintiff

v.

DOCKET NO. BCD-CV-2011-41

ROBERT YAMARTINO, et al

Defendant

## COUNSEL OF RECORD

| **Party Name:** | **Attorney Name:** |
| --- | --- |
| Vitorino America | Neal Pratt, Esq. |
| | Jonathan Mermin, esq. |
| | |
| Robert Yamartino | Geraldine Sanchez, Esq. |
| Board of Directors, Sunspray Condo Assoc | Geraldine Sanchez, Esq. |
| Michael Molloy | Geraldine Sanchez, Esq. |
| Robert Parent | Geraldine Sanchez, Esq. |
| Roger Smith | Geraldine Sanchez, Esq. |
| Reno Levesque | Geraldine Sanchez, Esq. |