2004 ME 75

**John H. SHOSTAK Jr. et al.**

v.

**Jeffrey SHOSTAK et al.**

Supreme Judicial Court of Maine.

Argued: Jan. 14, 2004.

Decided: June 3, 2004.

Mark G. Furey (orally), Nicholas Bull, Thompson, Bull, Furey, Bass & MacColl, L.L.C., P.A., Portland, for plaintiff.

Stephen E.F. Langsdorf (orally), Preti, Flaherty, Beliveau, Pachios & Haley, L.L.C., Augusta, for defendant.

* Although not available at oral argument, Justice Dana participated in this opinion. *See* M.R.App. P. 12(a).

Panel: CLIFFORD, RUDMAN, DANA,* ALEXANDER, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] Jeffrey Shostak, Diane Shostak, and Rockwood Development Corporation (RDC) appeal from the judgment entered in the Superior Court (Kennebec County, *Marden, J.*) granting damages to John H. Shostak Jr. and Craig Shostak. The court found that Jeffrey, Diane, and RDC breached a settlement agreement by making late payments, and the court awarded damages to John and Craig in the form of interest. We affirm a portion of the damages awarded for the breach of the settlement agreement, but we vacate a portion of the damages because of releases signed by John and Craig.

[¶ 2] The court further found that RDC, Jeffrey, and Diane breached a fiduciary duty owing to John and Craig, as shareholders of RDC, by not making a distribution of corporate earnings, and the court awarded John and Craig damages equal to their share of tax liability on RDC's earnings. We affirm the judgment on the breach of fiduciary duty claim.

## I. FACTS AND BACKGROUND

[¶ 3] The individual parties to this action are siblings. The case began as a derivative shareholder action brought by John and Craig against Shostak Construction Corporation (SCC) and Jeffrey. Through mediation, the parties resolved their differences. On February 13, 2001, John, Craig, Jeffrey, and Diane, through their attorneys, signed a settlement agreement.[1]

1. Diane Shostak was not named as a party in the initial complaint, but she was named in the settlement agreement signed by her attorney. The complaint was later amended, and

[¶ 4] The four siblings agreed that SCC would redeem John and Craig's shares in SCC for $727,500, and that John and Craig's shares in RDC would be redeemed, or Jeffrey and Diane would buy them, for $1,400,000. Jeffrey and Diane also agreed to purchase Craig's interest in the 4S Partnership for $27,500.[2] The agreement called for two preliminary payments to John and Craig, one to be made on or before February 16 and the other on or before March 8. The closing date was set for March 23, 2001. The agreement set forth other obligations and representations of the four siblings, including an agreement to provide mutual releases at the closing and dismiss all pending litigation.

[¶ 5] The first preliminary payment was made on time, but the second payment was late. The closing date was delayed several times. The parties accused each other of breaching portions of the settlement agreement, but through continued negotiations and conferences with the court, most of the provisions of the settlement agreement were fulfilled. On July 12, 2001, the SCC and 4S Partnership portions of the agreement closed, and the parties signed mutual releases. On September 10, 2001, the transaction involving the RDC shares closed, and the parties signed mutual releases.

[¶ 6] The court issued orders, dated June 19 and August 22, following conferences with the parties, which listed the contested issues and set forth procedures for resolving them. Pursuant to the procedures outlined by the court, John and Craig filed an amended complaint in two counts: Count I sought damages for breach of the settlement agreement and Count II claimed breach of fiduciary duty based on the refusal of RDC to pay divi-

dends in 2001. Diane, Jeffrey, and RDC answered and filed an amended counterclaim for breach of the agreement, breach of fiduciary duty, and unjust enrichment.

[¶ 7] Following a bench trial, the court found for John and Craig on all of the issues. With regard to Count I of the amended complaint, the court found that Jeffrey, Diane, and RDC breached the settlement agreement by not making timely payments as called for in the agreement, and the court determined that the appropriate remedy was an award of damages equal to interest on the late payments. The court rejected Jeffrey and Diane's contention that John and Craig had waived any claim for damages by signing the mutual releases. The court instructed the parties to calculate the exact amounts of interest owing. After a subsequent hearing, the court set the amounts of interest. The final judgment on Count I awarded $19,142.24 to Craig and $18,774.27 to John against Jeffrey, Diane, and RDC.

[¶ 8] The court also awarded damages to John and Craig on Count II of the amended complaint, the claim for breach of fiduciary duty. John and Craig contended that they were entitled to dividends from RDC for the first three quarters of 2001. The court found that historically RDC, a subchapter S corporation, had always paid dividends sufficient to cover each shareholder's tax liability on RDC's income. The court found that John and Craig were entitled to an amount equal to their 2001 tax liability for their share of RDC's corporate income. The final judgment on Count II awarded $7239 to Craig and $7024.50 to John against Jeffrey, Diane, and RDC.

[¶ 9] The court also found for John and Craig on counterclaims brought by Jeffrey, Diane, and RDC, and that portion of

both Rockwood Development Corporation and Diane were added as defendants.

2. The 4S Partnership was a business partnership of the four Shostak siblings.

the judgment has not been appealed. The court dismissed all claims against SCC.

## II. BREACH OF THE SETTLEMENT AGREEMENT

[¶ 10] In Count I of the amended complaint, John and Craig claimed that Jeffrey, Diane, SCC, and RDC breached the settlement agreement in that they did not make the settlement payments when they were due. The preliminary payment due on or before March 8 was not paid until April 10. The remaining payments for the redemption of the SCC and RDC shares and for Craig's interest in the 4S Partnership were due on March 23. The payment to Craig for the partnership was made on July 12, as was the payment for the SCC shares. The payment for the RDC shares was not made until September 10.

### A. The SCC and the 4S Partnership Releases

[¶ 11] Jeffrey and Diane contend that the trial court erred when it concluded that John and Craig had not released Jeffrey and Diane from the claim of breach of the agreement. Jeffrey and Diane had the burden of proving the affirmative defense of release, which is similar to the defense of accord and satisfaction, by a preponderance of the evidence. *Cf. E.S. Herrick Co. v. Me. Wild Blueberry Co.*, 670 A.2d 944, 946 (Me.1996) (stating that the party asserting the defense of accord and satisfaction has the burden of proof). The interpretation of an ambiguous release is a question of fact, *Hawkes v. Commercial Union Ins. Co.*, 2001 ME 8, ¶ 20, 764 A.2d 258, 266–67, which we review for clear error, *E.S. Herrick Co.*, 670 A.2d at 946. However, when the defense of release is based upon an unambiguous writing, the inquiry is a question of law, *Hawkes*, 2001 ME 8, ¶ 20, 764 A.2d at 266–67, which we review de novo, *Moody v.*

*State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 16, 843 A.2d 43, 49.

[¶ 12] Jeffrey and Diane argue that the releases signed by John and Craig relieved Jeffrey and Diane of liability for the late payments on the SCC shares and the 4S Partnership. The release that the parties signed on July 12 states that John and Craig release Jeffrey and Diane:

> from any and all manner of actions, suits, damages, attorney fees, and claims of whatsoever kind or nature ... now existing or which may result from the existing state of things, as of the effective date of this Agreement, which [John and Craig] ever had or now have, in any way related to the business of Shostak Construction Corporation.

Also on July 12, when Craig received his payment for the 4S Partnership, he released Jeffrey and Diane "from any and all claims, causes of actions or liabilities in any way related to the 4S Partnership or the real property."

[¶ 13] John and Craig contend that they released Jeffrey and Diane in the SCC release only as to claims "related to the business" of SCC. They argue that their claim for breach of the settlement agreement and request for interest on the late payments is not a claim relating to SCC's business. We disagree. "Business" is a very broad term, and the redemption of SCC shares clearly related to the business of SCC. If the parties had intended to exclude certain claims from the release, that is what they should have stated. Indeed, that was exactly what they stated in the RDC release. In contrast to the SCC and 4S Partnership releases, the RDC release, signed on September 10, expressly excluded "all issues unresolved and referred to in the Court Order dated August 22, 2001." The RDC release demonstrates that the parties knew how to be precise.

[¶ 14] In the SCC release, John and Craig released all claims "now existing or which may result from the existing state of things," without reservation. As of the date of the release agreement, July 12, John and Craig's claims for interest were "now existing." The unambiguous SCC release agreement bars John and Craig's recovery of interest for the untimely redemption of the SCC shares.

[¶ 15] The 4S Partnership release is similar to the SCC release. In it, Craig released Jeffrey and Diane "from any and all claims . . . in any way related to the 4S Partnership or the real property." Because of this release Craig cannot recover on his interest claim regarding the partnership.

[¶ 16] We do not agree with John and Craig's contention that the court's August 22 order demonstrates that they had not released their claim to interest because it followed their signing of the SCC release and Craig's signature on the 4S Partnership release. That order recites that a disputed issue is "[w]hether interest should be paid on the Shostak Construction redemption price, the [4S] acquisition price, the Rockwood Development stock purchases and, if so, for what period." The order is simply a recitation of the contested issue and nothing more.

B.   Breach Regarding the Purchase of the RDC Shares

[¶ 17] Jeffrey and Diane claim that their late purchase of the RDC shares was justified by John and Craig's breach of the agreement. The court concluded that Jeffrey and Diane were not justified in delaying the purchase. The court interpreted the agreement's time requirements for the purchase of RDC shares as independent of John and Craig's obligation to turn over the RDC corporate records. We review the court's construction of the unambigu-

ous contract de novo. *See Willis Realty Assocs. v. Cimino Constr. Co.,* 623 A.2d 1287, 1288 (Me.1993).

[¶ 18] Jeffrey and Diane contend that John and Craig's failure to turn over the RDC corporate records by February 16 caused them to withhold payment. According to Jeffrey and Diane, the records delivered on February 16 were not complete. As a result, they were not able to determine if John and Craig had satisfied their representation that they had managed RDC "in the ordinary course of business with proper corporate governance since May, 1999." Jeffrey and Diane argue that the settlement agreement made the RDC payment contingent on the fulfillment of John and Craig's obligations. The agreement states:

> In the event that Jeffrey and Diane are unable to close the entire transaction on or before March 23, 2001, they shall pay $727,500.00 to Craig and John to redeem their [SCC] stock and also pay $27,500.00 to Craig to buy out his partnership interest in 4-S. Thereafter, Diane and Jeffrey shall have an additional 45 days from [March 23] in which to close the purchase and/or redemption of the [RDC] stock for $1,400,000.00.

We agree with John and Craig's assertion that the phrase "unable to close" means that only Jeffrey and Diane's inability to close by March 23 allows a later purchase of the RDC shares.

[¶ 19] The representation by John and Craig that RDC had been run in the ordinary course of business was independent of the provisions regarding the closing date and the consequences of Jeffrey and Diane's inability to close. Because Jeffrey and Diane did not present any evidence to the trial court on their inability to close by the closing date, the court did not err in determining that they breached

the settlement agreement with regard to the RDC payment and in finding that John and Craig were entitled to interest for that late payment.

## III. BREACH OF FIDUCIARY DUTY

■ [¶ 20] In the second count of the amended complaint, John and Craig claimed that Jeffrey, Diane, and RDC breached their fiduciary duty when they failed to make distributions to the shareholders for the first three quarters of 2001. We review the court's factual findings for clear error. *Gay v. Gay's Super Markets, Inc.*, 343 A.2d 577, 579 (Me.1975).

■ [¶ 21] The court found that the RDC corporate minutes reflected an approval by the board of directors to pay quarterly dividends of $7500 to each shareholder in the years 1999 and 2000, but there were no corporate minutes for 2001. The court also found that RDC had historically protected the shareholders from tax liability for their respective shares of corporate income shown on the K–1 tax form. Based on this history, the court implicitly found that Jeffrey, Diane, and RDC breached their fiduciary duty to the shareholders to the extent that RDC had not reimbursed John and Craig for their individual tax liability attributable to their RDC shares. After further submissions by the parties, the court determined the monetary amount of John and Craig's tax liabilities.

[¶ 22] Jeffrey, Diane, and RDC argue that the court erred in failing to apply the business judgment rule. The business judgment rule provides that business decisions made by the directors of a corporation are not subject to judicial review unless they are the result of fraud or bad faith. *Rosenthal v. Rosenthal*, 543 A.2d 348, 353 (Me.1988). The court did not make an express finding of bad faith, but because it found that RDC should have made a distribution but failed to do so, the court implicitly found that the directors' failure was bad faith. Because Jeffrey, Diane, and RDC did not move for findings of fact, we assume that the court made all the factual findings necessary to its decision. *See Markley v. Semle*, 1998 ME 145, ¶ 4, 713 A.2d 945, 946.

[¶ 23] Jeffrey, Diane, and RDC contend that the evidence was insufficient for a finding of bad faith. There was evidence that, since at least 1990, RDC had always paid dividends to the shareholders. RDC's income in 2001 was sufficient to pay dividends. The court could have found that the significant increase in Jeffrey and Diane's shares of RDC on September 10 was enough incentive to keep them from declaring distributions for the first three quarters of 2001. John's and Craig's respective tax liabilities for 2001 for the RDC income were $7024.50 and $7239, which is the amount the court awarded to them. Based on this evidence, we cannot conclude that the court clearly erred in its implicit finding that the failure of RDC to pay 2001 distributions in an amount at least equal to the shareholders' tax liability for the corporate income was bad faith. Therefore, the court did not err in its judgment for John and Craig on Count II of the amended complaint.

The entry is:

Judgment on Count I affirmed in part and vacated in part. Judgment on Count II affirmed. Case remanded to the Superior Court for further proceedings consistent with this opinion.