MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2013 ME 19
Docket:        BCD-12-367
Argued:        January 15, 2013
Decided:       February 12, 2013

Panel:         SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, <u>MEAD</u>, GORMAN, and
               JABAR, JJ.

# VITORINO AMERICA

v.

# SUNSPRAY CONDOMINIUM ASSOCIATION et al.

MEAD, J.

[¶1] Vitorino America filed a complaint in the Superior Court, individually and derivatively on behalf of Sunspray Condominium Association (Association), against the Association and four members of its Board of Directors (Board), claiming in part that the defendants had refused to effectively enforce Sunspray Condominium's smoking ban. He appeals from a judgment entered in the Business and Consumer Docket (*Horton, J.*) dismissing, pursuant to M.R. Civ. P. 12(b)(6), the counts of the complaint related to the smoking ban. America contends that the court erred in (1) finding that he did not have a right to bring a shareholder derivative action under either the Maine Condominium Act (MCA), 33 M.R.S. §§ 1601-101 to 1604-118 (2012), or the Maine Nonprofit Corporation Act (MNCA), 13-B M.R.S. §§ 101-1406 (2012); (2) dismissing his individual

2

claims related to the smoking ban; and (3) denying his motion to file a second amended complaint following the partial dismissal of his amended complaint. We affirm the judgment.

## I. BACKGROUND

[¶2] Because the trial court dismissed the portion of America's amended complaint at issue pursuant to M.R. Civ. P. 12(b)(6), "we view the facts alleged in the complaint as if they were admitted."[1] *Ramsey v. Baxter Title Co.*, 2012 ME 113, ¶ 2, 54 A.3d 710. America owns a condominium unit at Sunspray Condominium in Old Orchard Beach. Sunspray owners are bound by a Declaration of Condominium (Declaration) that created Sunspray pursuant to the MCA, and also by the Association's by-laws. Pursuant to the Declaration, the Association "shall be the governing body for all of the unit owners with respect to the administration . . . of the Property as provided by the [MCA]." The individual

---

[1] America moved to amend his complaint for a second time and has included the proffered complaint in the appendix. Because the trial court denied his motion for leave to further amend the complaint, the facts recited here are drawn from America's first amended complaint.

The court let stand several counts of America's complaint claiming that the Association held an improper election for vacancies on the Board. America voluntarily dismissed those claims to allow the judgment dismissing his smoking-ban claims to become final, thereby allowing this appeal to proceed. *See* M.R. Civ. P. 54(b).

defendants named in the complaint are members of the Association's Board of Directors.[2]

[¶3]  In August 2009, a ban enacted by the Board on all smoking in common areas at Sunspray took effect.  In February 2010, the ban became effective for the entire property, including inside individual units.  America's complaint alleged that (1) the ban "was necessitated by the physical characteristics of the Sunspray Condominium building, which are such that smoke generated in one unit inevitably migrates into the units of non-smokers and into the common areas"; (2) America "cannot enter or leave his unit without passing the exhaust of a unit in which tobacco is being smoked in violation of the [s]moking [b]an"; (3) the Board, despite having received numerous reports of violations, repeatedly failed to take action to enforce the ban, and "[i]n the vast majority of instances of reported violations . . . has failed to investigate or otherwise take effective action"; and (4) when the Board did act, it did so "in a dilatory and ineffectual fashion."  The complaint further claimed that the "[d]efendants have acted in bad faith in failing to enforce the Smoking Ban, and not in the interests of the Association, pursuant to their personal agenda of continuing to permit smoking in the Sunspray

---

[2]  The complaint also named as a defendant the chair of the nominating committee for the disputed Board election.  The court dismissed all claims against that defendant and America has not appealed from that ruling.

4

Condominium building," and that the failure to enforce the ban is motivated by ill will or malice toward America.

[¶4] America's original complaint brought five counts related to the smoking ban: breach of fiduciary duty (Count I), violation of the MCA (Count III), violation of the MNCA (Count V), breach of contract (Count VII), and negligence (Count X). In each count, America alleged that he "sustained harm." The complaint requested permanent injunctive relief requiring the defendants to enforce the smoking ban, including testing for compliance and remediation measures; the appointment of a receiver to ensure compliance with the injunction; and ordinary and punitive damages. The defendants moved to dismiss the complaint; America responded by filing an amended complaint adding an allegation that the defendants acted in bad faith. Following the case's transfer to the Business and Consumer Docket, the defendants filed a motion to dismiss the amended complaint.

[¶5] On March 16, 2012, the court issued a written order dismissing America's smoking-ban claims. America filed a motion for reconsideration and for leave to amend his complaint for a second time to add new plaintiffs and new allegations of harm caused by secondhand smoke at Sunspray. Both motions were denied. The parties then stipulated to a dismissal with prejudice of all remaining claims, preserving America's right to appeal from the dismissal of his smoking-ban claims. This appeal followed.

## II. DISCUSSION

A.    The Denial of America's Second Motion to Amend

[¶6]  We initially examine whether America should have been allowed to amend his complaint for a second time following the dismissal of the smoking-ban counts in his first amended complaint.  We do so because one of the grounds the court cited for dismissing those claims was that America failed to assert a cognizable individual injury, and in his proffered second amended complaint America named new plaintiffs and alleged more specific injuries that the court recognized might survive a motion to dismiss.

[¶7]  We review the denial of a motion to amend the pleadings for an abuse of discretion, examining the record before the trial court at the time the motion was filed.  *Efstathiou v. Aspinquid, Inc.*, 2008 ME 145, ¶ 21, 956 A.2d 110.  After a responsive pleading is served, a party may amend a pleading "only by leave of court," although "leave shall be freely given when justice so requires."  M.R. Civ. P. 15(a).  To prevail on appeal, America "must demonstrate (1) that the court clearly and manifestly abused its discretion and (2) that the amendment [was] necessary to prevent injustice."  *Efstathiou*, 2008 ME 145, ¶ 21, 956 A.2d 110 (quotation marks omitted).

[¶8]  Given the state of the record at the time the court denied America leave to amend, we find no manifest abuse of discretion.  The dismissal order concerning

6

the first amended complaint, entered a month before America moved to amend for a second time, left intact most of the counts related to an allegedly improper Board election, meaning that those counts remained scheduled for trial.[3] The court noted that the complaint had been amended and litigated through a motion to dismiss once already, and concluded that "it is time for the election-related claims that remain in this case to move forward."

[¶9] The court further noted that many of the new allegations of harm in the proffered second amended complaint sounded in nuisance, and observed that its single nuisance count might be insufficient because it alleged nuisance resulting from failure to enforce the smoking ban, rather than harm caused by actual exposure to smoke. Taking all of the circumstances together, the court determined that "any nuisance claims . . . must be filed separately." That result does not rise to the level of a clear, manifest abuse of discretion, nor does it create an injustice because America's potential nuisance claim is not foreclosed in a future action. *See Efstathiou*, 2008 ME 145, ¶ 21, 956 A.2d 110.

B.     The Availability of a Derivative Action

[¶10] America's amended complaint alleged, "individually and derivatively on behalf of the Sunspray Condominium Association," that the Board's failure to

---

[3] America eventually stipulated to their dismissal, but not until after his motion for leave to further amend the complaint had been denied.

enforce the smoking ban violated the MCA and the MNCA. In his brief America concedes that "Maine statutory law does not expressly provide for a derivative action on behalf of a nonprofit corporation or condominium association as such," but he argues that he should nonetheless be allowed to bring a derivative suit as a matter of equity.

[¶11] Derivative actions are explicitly allowed in the case of corporations. 13-C M.R.S. §§ 751-758 (2012). Even when allowed, a derivative suit is "an extraordinary process" wherein a shareholder "is limited to asserting the substantive rights of the corporation rather than his own personal claims." *Voisine v. Berube*, 2011 ME 137, ¶¶ 4, 15, 38 A.3d 310 (quotation marks omitted). In contrast, the MNCA imposes a duty of good faith on directors and officers of a nonprofit corporation, 13-B M.R.S. §§ 717(1), 720(1), and allows "members in a representative suit" to assert that affirmative acts by corporate officers are *ultra vires*, 13-B M.R.S. § 203(1)(B); however, section 203(1) does not address corporate officers' alleged *failure* to act. The Maine Rules of Civil Procedure governing derivative actions discuss corporations and unincorporated associations, but make no mention of nonprofit corporations or condominium associations. *See* M.R. Civ. P. 23A, 23B.

[¶12] Like the MNCA, the MCA imposes a general "obligation of good faith" in the performance of duties it imposes, 33 M.R.S. § 1601-113, but it

contains no provision authorizing derivative suits. The Declaration states that Sunspray was created "pursuant to . . . the [MCA]." *See* 33 M.R.S. § 1601-102 ("[The MCA] applies to all condominiums created, in accordance with the provisions of this Act, within this State . . . ."). There is therefore no explicit authorization for America to bring a derivative action. Given that a derivative suit is "an extraordinary process," *Voisine*, 2011 ME 137, ¶ 4, 38 A.3d 310 (quotation marks omitted), we will not infer that one is authorized when the Legislature has not so provided by statute.

## C.     America's Individual Smoking-Ban Claims

[¶13]   Because the smoking-ban claims in America's amended complaint were dismissed pursuant to M.R. Civ. P. 12(b)(6), we review their sufficiency de novo "in the light most favorable to [America] to determine whether [they] set[] forth elements of a cause of action or allege[] facts that would entitle [America] to relief pursuant to some legal theory." *Ramsey*, 2012 ME 113, ¶ 6, 54 A.3d 710 (quotation marks omitted). The complaint must allege facts with sufficient particularity so that, if true, they give rise to a cause of action; merely reciting the elements of a claim is not enough. *See id.* ¶¶ 6-7. Before turning to an examination of the five smoking-ban-related counts in America's amended complaint, we first discuss two bases relied upon by the trial court in dismissing them.

1.    Business Judgment Rule

[¶14]  In all of the smoking-ban claims except the count alleging negligence the court identified the business judgment rule as a basis for dismissal.  "The business judgment rule provides that business decisions made by the directors of a corporation are not subject to judicial review unless they are the result of fraud or bad faith."  *Shostak v. Shostak*, 2004 ME 75, ¶ 22, 851 A.2d 515 (citing *Rosenthal v. Rosenthal*, 543 A.2d 348, 353 (Me. 1988)).[4]  The rationale for the rule is that "it falls outside the proper judicial domain to inquire into and second-guess the prudence of particular business decisions honestly reached by those entrusted with the authority to determine what course of action best advances the well-being of the enterprise."  *Rosenthal*, 543 A.2d at 353.

[¶15]  Although three of the smoking-ban counts in America's amended complaint allege that the defendants acted in bad faith, which would ordinarily make the business judgment rule inapplicable, the facts he recites establish that the defendants have not flatly refused to enforce the ban, but rather have enforced it in a way that he believes to be insufficient.  For example, the complaint asserts: "In the vast majority of instances of reported violations . . . the Board . . . has failed to investigate or otherwise take effective action. . . . In the few instances where steps

---

[4]  Although in *Shostak v. Shostak* we referred to corporate directors when discussing the applicability of the business judgment rule, 2004 ME 75, ¶ 22, 851 A.2d 515, pursuant to the MCA "[t]he principles of law and equity, including the law of corporations . . . supplement the provisions of this Act, except to the extent inconsistent with this Act," 33 M.R.S. § 1601-108 (2012).

have been taken to enforce the Smoking Ban, they have been taken in a dilatory and ineffectual fashion." Absent the conclusory recitation of the phrase "bad faith," the facts alleged in the complaint thus portray a disagreement between America and the Board members over how to enforce the ban, not whether to enforce it. Disagreement is not bad faith—we have said that "[b]ad faith imports a dishonest purpose and implies wrongdoing or some motive of self-interest." *Seacoast Hangar Condo. II Ass'n v. Martel*, 2001 ME 112, ¶ 21, 775 A.2d 1166 (quotation marks omitted); *see Ramsey*, 2012 ME 113, ¶ 7, 54 A.3d 710 (concluding that a complaint was insufficient when it "merely recit[ed] in conclusory fashion" necessary elements of a claim).

[¶16] An absolute refusal to enforce a condominium rule might be actionable as a decision made in bad faith unprotected by the business judgment rule. However, accepting as true the allegations made in the amended complaint that the Board has not reacted to smoking-ban complaints with sufficient speed or vigor, the business judgment rule's protections are not lost simply because America alleges that an inadequate response, as opposed to no response, equates to bad faith.

2. The Requirement for a Cognizable Injury

[¶17] Each smoking-ban-related count of the amended complaint recites that America "sustained harm." In dismissing the smoking-ban counts, the court

found that "[a] crucial aspect of the Amended Complaint is that it does not allege that the asserted failure to enforce the smoking ban has caused harm—at least legally cognizable injury—to [America] individually."

[¶18]  The specific factual assertion of harm made in the amended complaint is that "America cannot enter or leave his unit without passing the exhaust of a unit in which tobacco is being smoked in violation of the Smoking Ban."  America argues that "[c]igarette smoke is universally understood to be a toxic and carcinogenic substance," and therefore his "allegations that he has been exposed to secondhand smoke . . . describe a legally cognizable injury sufficient to withstand a motion to dismiss."  The court found America's allegation that he "sustained harm" as a result of walking past another unit's exhaust to be insufficient absent some particularized physical injury or illness.

[¶19]  The MCA provides: "If . . . any . . . person subject to this Act fails to comply with . . . any provision of the declaration or bylaws, any person or class of persons *adversely affected* by that failure has a claim for appropriate relief." 33 M.R.S. § 1604-116 (emphasis added).  The Sunspray Declaration provides: "*An aggrieved unit owner* shall have a right of action against the Association for failure to comply with or to enforce . . . any rules and regulations duly adopted . . . ." (Emphasis added).  In reaching its conclusion that the amended complaint was insufficient to withstand a motion to dismiss, the trial court found that

the reference to "aggrieved unit owner," like the reference to "persons adversely affected" in the MCA, has to be construed to require particularized injury, meaning that the aggrieved owner must allege and if necessary, establish, that he or she has suffered particularized injury as a result of the acts or omissions at issue.

[¶20]  We agree with the Superior Court.  A complaint "must . . . allege facts sufficient to demonstrate that the complaining party has been injured in a way that entitles him or her to relief."  *Burns v. Architectural Doors & Windows*, 2011 ME 61, ¶ 17, 19 A.3d 823.  In a different context, we said that "[a] person is aggrieved . . . if that person has suffered particularized injury—that is, if . . . [an] action operated prejudicially and directly upon the party's property, pecuniary or personal rights."  *Nelson v. Bayroot, LLC*, 2008 ME 91, ¶ 10, 953 A.2d 378.

[¶21]  Here, accepting the factual allegation in the complaint as true, America was exposed to secondhand smoke when outside his unit.  The complaint does not allege how much, how often, or to what effect.  Simply stating in his brief that the harm to him is "universally understood" under those vague circumstances is not sufficient to establish an actionable injury.  Without any specifics concerning his exposure and the results of that exposure, the court could not find that America "allege[d] facts sufficient to demonstrate that [he] has been injured in a way that entitles him . . . to relief."  *Burns*, 2011 ME 61, ¶ 17, 19 A.3d 823.

3. The Sufficiency of the Complaint's Smoking-Ban Counts

[¶22]    We now examine the legal sufficiency of the five smoking-ban-related counts in America's amended complaint. In Counts I (breach of fiduciary duty), III (violation of the MCA), and V (violation of the MNCA), America alleged that the defendants acted in bad faith. As discussed above, the complaint's factual assertions do not make out a claim of bad faith due to a flat refusal to enforce the smoking ban, but rather demonstrate a disagreement over how to enforce it. In that circumstance, the defendants' discretionary decisions are protected by the business judgment rule.

[¶23] Count VII alleges breach of contract based on the defendants' failure to enforce a Sunspray rule, namely the smoking ban. An element of that claim is that America show "actual injury or damage." *In re Hannaford Bros., Co. Customer Data Sec. Breach Litig.*, 2010 ME 93, ¶ 8, 4 A.3d 492. As discussed above, the facts alleged in the complaint do not make out a cognizable injury to America.

[¶24] Finally, Count X alleges negligence in that "[d]efendants breached their duty to exercise reasonable care in enforcing the Smoking Ban." "A claim of negligence requires proof of a duty owed, breach of that duty, and an injury proximately caused by the breach." *Gray v. TD Bank, N.A.*, 2012 ME 83, ¶ 16, 45 A.3d 735; *see In re Hannaford Bros., Co.*, 2010 ME 93, ¶¶ 8-9, 4 A.3d 492

(stating that "actual injury" is an element of a negligence claim, and that because "[t]he tort of negligence does not compensate individuals for the typical annoyances or inconveniences that are a part of everyday life. . . . [l]iability . . . ordinarily requires proof of personal injury or property damage." (citation omitted)). Because the complaint did not allege a cognizable injury, this count was properly dismissed.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Neal F. Pratt, Esq., and Jonathan G. Mermin, Esq., Preti Flaherty, LLP, Portland, for appellant Vitorino America

Catherine R. Connors, Esq., Geraldine G. Sanchez, Esq., Nolan L. Reichl, Esq., and Joshua D. Dunlap, Esq., Pierce Atwood LLP, Portland, for appellees Sunspray Condominium Association et al.

**At oral argument:**

Neal F. Pratt, Esq., for appellant Vitorino America

Catherine R. Connors, Esq., for appellees Sunspray Condominium Association et al.