STATE OF MAINE
HANCOCK, ss

SUPERIOR COURT
Docket No. CV-17-0024

Lester J. Cox Jr., deceased,
Phyllis A. Cox, personal representative of the
Estate of Lester J. Cox Jr.,

Plaintiff,

v.

**JUDGMENT**

Carefree Window & Siding Co., Inc.
Jeffrey L. Mayhew,
Charles A. Mayhew, Jr.

Defendants.

Before the court is the plaintiff's six count complaint and the defendants' four counterclaims against the plaintiff. A bench trial was held on this matter on March 26, 2019 where both parties had the opportunity to present evidence and make arguments before the court. For the reasons provided below, the court rules against the plaintiff on all of their counts except, in part, their request for declaratory judgment and the court rules against the defendants on all of their counterclaims against the plaintiff.

**Background**

The record presented by the parties indicates the following facts:

Lester Cox worked in the home improvement industry from at least the 1980s until his death in 2017. In 1990, Mr. Cox joined the Carefree Window & Siding Co. as an installer and a one third shareholder. Jeffrey L. Mayhew and Charles A. Mayhew had founded the business in 1983 along with another person and were the other two shareholders of the corporation, each owning a third of the outstanding shares. Jeffrey and Charles Mayhew had known and worked with Lester Cox before inviting him to join the corporation in 1990. Lester Cox, Jeffrey Mayhew, and Charles Mayhew were

1

presumably all directors and officers of the corporation in 1990 until Lester Cox was removed as an officer and director in 2015. After Lester Cox joined the corporation, all three of the shareholders entered into a shareholder agreement, which will be discussed later in this opinion.

The corporation operated as a home improvement business that primarily installed siding and windows and performed other contract work involving the exterior of residential buildings. Beginning in 1987, the business also regularly engaged in housing speculation—Carefree Windows would purchase unimproved land, construct a residence, and sell it on the real estate market. From the beginning of the business until 2005, Jeffrey Mayhew acted as the business' manager and Lester Cox and Charles Mayhew worked as installers. As a business manager, Jeffrey Mayhew would answer the phones, meet prospective customers and provide free quotes, manage the business' materials supply contracts, and other general administration.

Around 2005, Lester Cox began requesting that Jeffrey Mayhew and Charles Mayhew allow him to take over as the business manager and sometime in 2005 Lester Cox left his role as an installer and began serving as the corporation's business manager, performing the same duties that Jeffrey Mayhew performed. Jeffrey Mayhew assumed Lester Cox's role as an installer. Throughout his life, Lester Cox struggled with alcoholism and both Jeffrey Mayhew and Charles Mayhew were aware of this before 2005. Jeffrey Mayhew testified that he traded roles with Lester Cox because he believed that giving Lester Cox more responsibility in the business would help him to overcome his drinking problem.

When Lester Cox took over the business in 2005, Carefree Windows was a profitable and modestly successful home improvement business. The record indicates that in 2005 the corporation had a total income of $1,668,000, total assets of $313,00, and total liabilities of $308,000. Jeffrey Mayhew testified that prior to 2005 it was not uncommon for Jeffrey Mayhew, Lester Cox, and Charles Mayhew to each earn $75,000 a year from the business. In 2003, before the Lester Cox took over as

2

business manager, the corporation entered into contracts to construct 10 condominium units (5 duplex residences) in Brewer, ME and purchased adjacent land to construct an additional two condominiums for later speculation. The corporation entered this deal after a unanimous vote by all three of its shareholders. Carefree began the condo construction in 2003 and finished construction around 2006. All of the condos constructed under contract were sold for around $300,000 to $400,000 and Carefree expected to sell the two additional condos within that range. The additional condos remained unsold in 2008 and in that year the United States real estate market collapsed and the economy experienced a financial crisis. The additional condos Carefree constructed remain unsold and the business has not engaged in housing speculation since 2008.

Jeffrey Mayhew testified that as a result of the 2008 financial crisis, the whole of Carefree's business suffered a downturn as it became more difficult for the company to acquire home improvement contracts. He further testified that after Lester Cox took over management of the business the corporation has struggled. The defendants submitted financial statements that indicate that in 2015, 2016, 2017, and 2018 the business was in significant debt and was no longer generating a profit. The corporation's balance sheet from 2015 indicates that the corporation's assets totaled $335,443 and its liabilities totaled $727,919.

The defendants' attribute their corporation's financial struggles to Lester Cox's performance as business manager from 2005 to 2015. Jeffrey Mayhew testified that Lester Cox continued to have a drinking problem after assuming the manager role in 2005 and that his drinking affected his work performance. Jeffrey Mayhew testified that while Cox was acting as manager the company received fewer jobs and that Cox sometimes was unable to come to work, give estimates, and sign contracts with customers because of his drinking. Jeffrey Mayhew further testified that he believes Cox was not securing credits from their supplier, Applicators Sales and Service, through their co-op advertising agreement, which may have cost the company $1,600 a year. He also testified that at some point

3

between 2005 and 2015, customers began calling him and asking why they were unable to receive estimates, which led him to begin telling customers to call him or Charles Mayhew directly.

However, Lester Cox's daughter, Jenna Cox, testified that while Lester Cox struggled with alcohol abuse throughout his life, he was not constantly drunk, and was working throughout his time at Carefree Windows. According to his daughter, between 2005 and 2015 Lester Cox would go months without drinking and then would have episodes where he would go on a binge spanning 1-7 days at a time. She also testified that he sought assistance for his issues with alcohol during this time and worked for the company.

In 2013, Jeffrey Mayhew took over the management of the business from Lester Cox, he began by opening the company's mail and gradually started performing all of the managerial tasks except for driving to customer's residences to provide free estimates, which he left to Lester Cox. When Jeffrey Mayhew took over as business manager in 2013, Lester Cox's role in the business was reduced to one task, providing job estimates to customers. Jeffrey Mayhew also testified that when he took over as business manager in 2013 he noticed that the company had not received co-op advertising credits from its supplier during that year and that, after a phone call with the supplier, he came to believe that the company had not been receiving the credits since Lester Cox took over as manager.

On May 5, 2015, Charles Mayhew and Jeffrey Mayhew convened a shareholder meeting to address Lester Cox's difficulties with alcohol and his fitness to continue as a director, officer, and employee of the corporation. Jeffrey Mayhew testified that as of May, 5 2015, Lester Cox had not worked for several months. At this time all three were directors and officers of the corporation; Lester Cox was Vice-President of the corporation, respectively. (Pl.'s Ex. 4). Jeffrey Mayhew testified that at the meeting Lester Cox admitted he had a drinking problem and that Jeffrey and Charles Mayhew decided to give Lester Cox till the rest of the year to show them he could stay sober and work in the manner that they knew he could. The meeting's minutes state that all three of the shareholders agreed

4

that if Lester Cox adequately performs his duties as an employee he would not be terminated as an employee or removed as a director. (Pl.'s Ex. 4). They further agreed that if Charles Mayhew and Jeffrey Mayhew did not unanimously agree that Lester Cox was adequately performing his duties he would be terminated and removed as director and officer of the corporation. *Id.* The minutes further state that all three agreed that if Lester Cox was terminated and removed, Lester Cox would reimburse the corporation for one-third of any outstanding debt of the corporation and agree to not-compete with the corporation. *Id.* Jeffrey Mayhew, Lester Cox, and Charles Mayhew all signed a copy of these minutes.

On December 29, 2015, the corporation held another meeting where Charles Mayhew and Jeffrey Mayhew decided to terminate Lester Cox as an employee, director, and officer. Jeffrey Mayhew testified that at that point, he and Charles had concluded that Lester 'was not going to sober up' and that he and Charles were doing all the work in the business. Jeffrey Mayhew further testified that he believed Lester broke the May 5, 2015 agreement two weeks after signing it because he received a call from a woman who said she wanted to call an ambulance for Lester Cox. Jeffrey Mayhew testified that he assumed he was receiving the call because Lester Cox had been abusing alcohol.

Lester Cox died in March 2017. Prior to his death, Carefree Windows had purchased life insurance on Lester Cox, Jeffrey Mayhew, and Charles Mayhew, with the corporation listed as the beneficiary. After Lester Cox died, the corporation made a claim on this life insurance policy and received $100,664.16 in proceeds. These funds were placed into a checking account at T.D. Bank separate from the corporation's other accounts. Jeffrey Mayhew testified that the corporation has since made transfers from this account to the corporate account in order to help pay off some of the corporation's debts.

At the time of his death Lester Cox was also in possession of a 2005 GMC truck that is titled to Jeffrey Mayhew for use in the business and was being used by Lester Cox for his personal use. This

5

vehicle remains at Lester Cox's house and has not been operated since his death. Jeffrey Mayhew testified that in 2015, the vehicle had a book value of between $7,000 and $10,000. Jenna Cox testified that the vehicle is currently non-functional and that the estate remains in possession of the vehicle.

Before his death, Lester Cox commenced this suit against Carefree Windows and against Jeffrey Mayhew and Charles Mayhew personally. Plaintiff's complaint alleges six counts against the defendants. Count I alleges breach of fiduciary duty; Count II alleges breach of the duty of good faith and fair dealing; Count III alleges fraud; Count IV alleges unjust enrichment; Count V requests a declaratory judgment based on their fraud allegations and the shareholder agreement; and Count VI requests a judicial dissolution of Carefree Windows and Siding Co., Inc. The complaint alleges that the defendants withheld profits from Lester Cox that derived from his work at the company and as a shareholder, forced him out of his roles as employee, officer, and director of the corporation, burdened him with a disproportionate share of the corporation's debts through fraud, and fraudulently induced him to forfeit his interest in the corporation. In addition, the complaint requests that the court grant a declaratory judgment ordering the defendants to pay plaintiff a share of the corporate profits under the corporation's shareholder agreement, back pay, and prohibit the defendants from seeking the enforcement of corporate debts against Plaintiff. During the bench trial, the plaintiff specifically requested that the proceeds from the company's life insurance policy on Lester Cox be distributed to the estate in exchange for Lester Cox's outstanding shares in the corporation.

The defendants have brought four counterclaims against the plaintiff. Count I alleges that Lester Cox failed to discharge his duties as a manager with reasonable care and reasonable business judgment, which has caused damages to the defendants. Count II alleges that Lester Cox breached his fiduciary duties to the defendants and Count III alleges that Lester Cox committed waste while he was manager of the business. Count IV alleges that the corporation's shareholder agreement includes an express or implied agreement that all three of the corporation's shareholders would actively work

6

and participate in the business to produce revenue and that Lester Cox breached this agreement. The defendant's answer alleges that Lester Cox effectively ceased to productively engage in the business, which constitutes a breach of the agreement, and that Lester Cox drew more money from the corporation than he was entitled to receive.

**Analysis**

### 1. Carefree Window's Business Decline Between 2005 and 2015

As a preliminary matter, the court finds that the record presented by the parties does not demonstrate with any certainty that Mr. Cox was the cause of Carefree windows decline in business from the time he took over as business manager in 2005 till his removal as director and officer in 2015. While the financial records relied on by the defendants, show that the business was performing abysmally in 2015 through 2017, Jeffrey Mayhew testified that he took over as manager of the company again sometime in 2013 and that Mr. Cox's only involvement in the company after that time was to provide estimates to customers regarding their home improvement projects. More importantly, the court was not provided any financial records regarding the corporation's financial state between 2006 and 2014 and thus, is unable to reasonably infer that Mr. Cox's conduct as a manager caused harm to the corporation during those years.

In addition, the only witness to give testimony regarding the goings on at Carefree Windows, was the defendant Jeffrey Mayhew; his testimony does not provide the court with a sufficient basis for finding that Mr. Cox was responsible for Carefree Window's financial decline. While Mr. Mayhew testified that Mr. Cox's work performance was impaired by his alcoholism, the court was provided little information regarding any particular instances where Mr. Cox's alcoholism or mismanagement caused damages to the company between 2005 and 2013. Mr. Mayhew testified generally that some customers were unable to receive estimates through Mr. Cox but the court is unable to infer damages from Mr. Cox's conduct in that regard with any certainty. Mr. Mayhew also testified that in 2013 he

7

concluded that the company was not receiving co-op advertising through its relationship with Applicators Sales and Service; however, besides Mr. Mayhew's self-serving conclusion, the court has no evidence to support that assertion.

Jeffrey Mayhew further testified that under Mr. Cox's management Carefree Windows acquired significant trade debts with its supplier and other financial debts and that Mr. Cox was the cause of this increase in debt. To support that assertion the defendants submitted a copy of a promissory note for $73,700 which Carefree Windows provided to Applicator Sales & Service for that trade debt. The note bore the writing "Lester is responsible for this note," which was written on top of the note by Jeffrey Mayhew. The defendants also submitted billing summaries of their business loan accounts at T.D. Bank and KeyBank, which show the balance of these loan accounts in 2019 but does not show other relevant account history. Based on this information and the rest of the record, the court cannot reasonably infer that these debts are the result of Mr. Cox's alleged mismanagement of the company between 2005 and 2013.

Due to the nature and quality of the evidence presented, the court finds that the evidence does not indicate that Mr. Cox's conduct as the corporation's business manager was a determinative cause of Carefree Window's decline in business between 2005 and 2015.

### 2. Defendant's Counterclaim Count II and Plaintiff's Count I Fiduciary Duties of Officers and Directors of Closely Held Corporations

Under Maine common law, a corporate director of a close corporation owes the following fiduciary duties to the corporation as well as to shareholders:

1) To act with that degree of diligence, care and skill which ordinarily prudent person would exercise under similar circumstances in like positions;
2) To discharge the duties affecting their relationship in good faith with a view to furthering the interest of one another as to the matters within the scope of the relationship;
3) To disclose and not withhold from one another relevant information affecting the status and affairs of the relationship;
4) To not use their position, influence or knowledge respecting the affairs and organization that are subject to the relationship to gain any special privilege or advantage over the other person or persons involved in the relationship.

8

*Rosenthal v. Rosenthal*, 543 A.2d 348, 352 (Me. 1988) ("this delineation of fiduciary obligations accurately reflects the duties of care and loyalty under Maine law by a corporate director to the corporation and its shareholders.") The Maine Business Corporations Act mandates that members of a board of directors must act in good faith and in the manner that the directors reasonably believe to be in the best interests of the corporation. 13-C M.R.S. § 831(1) (2018). Directors must also "discharge their duties with the care that a person in a like position would reasonably believe appropriate under similar circumstances." 13-C M.R.S. § 831(2) (2018). In order to prevail on a breach of fiduciary duty claim, the party must demonstrate that the alleged breach proximately caused the damages for which the plaintiff seeks to recover. *Maples v. Contorakes*, No. BCD-CV-18-02, 2019 Me. Bus. & Consumer LEXIS 26, at *40 (July 22, 2019) (Plaintiff seeking to recover damages for breach of fiduciary duty must establish causation).[1]

In this case, neither party has provided sufficient evidence for the court to reasonably conclude that Lester Cox, Jeffrey Mayhew, or Charles Mayhew breached their fiduciary duties to one another or that any of these alleged breaches proximately caused the damages alleged by the parties. Therefore, the court must deny the plaintiff claim for breach of fiduciary duty as well as the defendants' counterclaim for breach of fiduciary duty.

### 3. Count I and Count III of Defendant's Counterclaims: Breach of the Duty of Care and Waste

In Count I, the defendants claim that over the course of his tenure as manager of the corporation, Lester Cox failed to use regular and prudent business judgment to manage the business,

---

[1] *See also, Mortg. Sols. Of Me., Inc. v. Keniston*, No. BCD-WB-CV-07-12, 2010 Me. Bus. & Consumer LEXIS 3, at *9 (July 16, 2010) (to prevail on breach of fiduciary duty claim, plaintiff must show that breach proximately caused damages that plaintiff seeks to recover); *Warner v. Atkinson Freight Lines Corp.*, 350 F. Supp 2d 108, 124 (D. Me. 2004) (applying Maine law, a claim of breach of fiduciary duty requires plaintiff to show he has damages proximately caused by the defendant's breach); *Stewart v. Machias Sav. Bank*, 2000 ME 207, ¶¶ 8-12, 762 A.2d 44; *Steeves v. Bernstein, Shur, Sawyer & Nelson*, 1998 ME 210, ¶ 10, 718 A.2d 186, 189, n. 8 (Me. 1998).

performed poorly, and negligently mismanaged the business. In Count III the defendants' further claim that this alleged mismanagement and negligence constitutes waste. In substance, the defendants appear to claim that Lester Cox breached his duty of care as an officer of their closely held corporation. The Maine Business Corporations Act states the following regarding a corporate officer's duty of care:

1. Basic Standard of Conduct. An officer, when performing in the capacity of an officer, has the duty to act:
   A. In good faith;
   B. With the care that a person in a like position would reasonably exercise under similar circumstances; and
   C. In a manner the officer reasonably believes to be in the best interests of the corporation . . .
2. Basis for potential liability. An officer is not liable to the corporation or its shareholders for any decision to take or not to take action, or any failure to take any action, as an officer if the duties of the office are performed in compliance with this section.

13-C M.R.S. § 843 (2018). In addition, a corporate officer's business decisions as an officer of the corporation are subject to the business judgment rule. *Rosenthal v. Rosenthal*, 543 A.2d 348, 352-354 (Me. 1988). Under the business judgment rule, "business decisions made by directors of a corporation are not subject to judicial review, unless they are the result of fraud or bad faith." *Shostak v. Shostak*, 2004 ME 75, ¶ 22, 851 A.2d 515.

Based on the limited record presented, the court concludes that Lester Cox's conduct as a manager and officer of Carefree Window's does not fall outside the standard of care prescribed by § 843. While the record does indicate that Mr. Cox was likely drunk during some of the time he acted as a manager of the corporation, the evidence is insufficient for the court to identify any damages that resulted from these occurrences with any certainty or that Mr. Cox's management of the corporation resulted in waste. In addition, any business decisions that Mr. Cox made while a director and officer of the corporation are subject to the business judgment rule. As discussed later in the opinion, the evidence presented in this case is not sufficient for the court to find that Mr. Cox made any of his business decisions between 2005 and 2015 fraudulently or in bad faith. For these reasons the court

rules in favor of the plaintiff on the defendants' counterclaim and concludes that Lester Cox did not breach his duty of care as an officer of the corporation and his conduct as an officer and director does not constitute waste.

### 4. Plaintiff's Fraud Claims

The plaintiff alleges fraud in both Count III (fraud) and Count V (declaratory judgment) of the complaint. In brief, Plaintiff alleges that the defendants failed to disclose material facts and misrepresented certain facts to Lester Cox for the purpose of inducing Cox to take certain actions regarding the corporation. In Count V of the complaint, Plaintiff alleges that the defendants' fraud caused Lester Cox to assume corporate debts, give personal assets to the corporation, and forfeit his interest in the corporation. In order to prevail on a claim for fraudulent misrepresentation the plaintiff must prove five elements by clear and convincing evidence:

> 1) Defendant made a false representation 2) of a material fact 3) with knowledge of its falsity or in reckless disregard of whether it is true or false 4) for the purpose of inducing the plaintiff to act or to refrain from acting in reliance on it, and 5) the plaintiff justifiably relied on the representation as true and acts upon it to the damage of plaintiff.

*Cianchette v. Cianchette*, 2019 ME 87, ¶ 20, 209 A.3d 745; *St. Francis De Sales Fed. Credit Union v. Sun Ins. Co. of N.Y.*, 2002 ME 127, ¶ 26, 818 A.2d 995 (plaintiff must prove all five elements by clear and convincing evidence.) "When clear and convincing evidence is required, plaintiff bears the burden of persuasion to place in the ultimate fact finder an abiding conviction that the truth of their factual contentions are highly probable." *St. Francis De Sales Fed. Credit Union*, 2002 ME 127, ¶ 26, 818 A.2d 995; *Francis v. Stinson*, 2000 ME 173, ¶ 39, 760 A.2d 290 ("a claim for fraud must be proved by evidence that shows the existence of fraud is highly probable"). Based on the whole of the record, the plaintiff has not presented sufficient evidence to establish any of the elements of fraud by clear and convincing proof and therefore, the court denies plaintiff's fraud claims.

### 5. Plaintiff's Claim for Unjust Enrichment

11

In Count IV of the complaint, Plaintiff alleges that Defendants were unjustly enriched by the plaintiff's assumption of corporate debts, a transfer of Plaintiff's personal automobile to the corporation, and by Plaintiff's service to the corporation for which he was not compensated. "Unjust enrichment" doctrine allows recovery for the value of a benefit retained by a party when there is no contractual relationship "but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay." *Nadeau v. Pitman*, 1999 ME 104, ¶ 14, 731 A.2d 863. "The existence of a contractual relationship, precludes recovery on a theory of unjust enrichment." *Id.* To establish a claim for unjust enrichment, the plaintiff must prove three elements:

> [One] a benefit conferred upon the defendant by the plaintiff; [two] an appreciation or knowledge by the defendant of the benefit; and [three] the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value.

*Aladdin Elec. Assocs. v. Town of Old Orchard Beach*, 645 A.2d 1142, 1144 (Me. 1994). In this case, the plaintiff has not presented sufficient evidence to establish unjust enrichment. In particular, the plaintiff has not provided evidence that Lester Cox transferred his personal automobile to the corporation without receiving payment for its value or that he provided services to the corporation for which he was not compensated. In addition, unjust enrichment is not an appropriate remedy for a claim arising from Plaintiff's assumption of corporate debts resulting from the agreement between the parties on May 15, 2015. *See Nadeau*, 1999 ME 104, ¶ 14, 731 A.2d 863 ("existence of a contractual relationship, precludes recovery on a theory of unjust enrichment"). For these reasons, the plaintiff's claim for unjust enrichment is denied.

### 6. Plaintiff's Claim for Breach of the Duty of Good Faith and Fair Dealing

Count II of the plaintiff's complaint alleges that defendants Jeffrey Mayhew and Charles Mayhew breached their duty of good faith and fair dealing as corporate directors and officers to Lester Cox. The Maine Business Corporation Act states that both directors and officers of a corporation have a duty to act in good faith. 13-C M.R.S. §§ 831, 843. In this context, "good faith" generally

12

means acting with an honest purpose and the belief that what is being done is for the benefit of the corporation. *Bates St. Shirt Co. v. Waite*, 130 Me. 352, 368 (1931). For example, directors may not act for the corporation in matters in which they are personally interested. *Bates St. Shirt Co.*, 130 Me. at 368. Whereas "bad faith" describes a "dishonest purpose and implies wrongdoing or some motive of self-interest." *America v. Sunspray Condo. Ass'n*, 2013 ME 19, ¶ 15, 61 A.3d 1249.

The facts as presented in this case, indicate that defendants Jeffrey Mayhew and Charles Mayhew were acting in good faith when they decided to remove Lester Cox as a director and officer of the corporation. The record indicates that the Mayhews were concerned about the impact Lester Cox's alcoholism was having on his work performance and that they voted to remove him from his positions as director and officer because of these concerns. The plaintiff has not presented any evidence that the Mayhews were acting with a dishonest or wrongful purpose or that their actions were tainted by a conflict of interest. For these reasons, the court concludes that the defendants did not breach their duty of good faith and fair dealing to Lester Cox.

### 7. Shareholder Agreement

#### a. Defendants' Claim that Plaintiff Breached the Shareholder Agreement

In Count IV of their counterclaims, the defendants allege that the corporation's shareholder agreement includes an express or implied agreement that all three of the corporation's shareholders would actively work and participate in the business to produce revenue and that Lester Cox breached this agreement. The defendants have not cited any particular portion of the written shareholder agreement that binds the shareholders to actively work and participate in the business or any other provision of the written agreement that the plaintiff has breached. The court has examined the text of the shareholder agreement in detail but has not found any indication that the agreement binds the shareholders to actively work and participate in the business to produce revenue. The shareholder agreement does state that

13

. . . the shareholders and the corporation also desire to provide for the continuity and maintenance of the proficient management, control and operation of the business of the Corporation, restrict the transfer of Shares of the Corporation currently held or subsequently acquired by the Shareholders, and to provide for certain other matters . . .

(Pl.'s Ex. 3, at 1-2.) However, none of this language indicates that the shareholders are bound to actively work and participate in the business nor does any other provision of the agreement. In addition, the defendants have not presented any testimony or other evidence to establish that such an agreement existed. For these reasons, the court concludes that the plaintiff has not breached the shareholder agreement.

### b. Plaintiff's Request for Corporate Profits and Back Pay

Additionally, in Count V of the complaint Plaintiff requests that the court grant a declaratory judgment ordering the defendants to pay Plaintiff a share of the corporate profits under the corporation's shareholder agreement and back pay by virtue of Plaintiff's position as a shareholder, director, and officer of the corporation. During closing arguments, Plaintiff specifically requested that the court declare that the estate owns Lester Cox's shares in the corporation without any obligation to return the shares under the shareholder agreement and that the court find that the estate is entitled to all or part of the proceeds from the life insurance policy in exchange for Lester Cox's outstanding shares.

First, the court finds that Lester Cox's shares in Carefree Window & Siding are now owned by his estate, as there is nothing in the shareholder agreement or the record that indicates otherwise. The estate is entitled to all its rights as a shareholder of the corporation as provided by Maine law, including voting rights. The court further concludes that as a one third shareholder in the corporation, the estate is entitled to a proportionate share of any distributions made by the corporation in accordance with Section 12 of the shareholder agreement. (Pl.'s Ex. 3, at 17.) Second, the court concludes that Carefree Windows is not obligated under the shareholder agreement to buy back the shares held by Lester Cox's estate nor is it required by the shareholder agreement to distribute the

14

proceeds of the insurance policy taken out by the corporation on Lester Cox to his estate. Third, the court does not award any back pay to the plaintiff, as the plaintiff has not provided sufficient evidence to determine what if any back pay or other compensation is due by virtue of his position as a director and officer of the corporation.

## 8. Judicial Dissolution

Count VI of Plaintiff's complaint requests that the court judicially dissolve the defendant corporation Carefree Windows & Siding Co., Inc. Under the Maine Business Corporation Act,

> a corporation may be dissolved by a judicial dissolution in a proceeding by . . . [a] shareholder if it is established that . . . the directors or those in control of the corporation have acted, are acting or will act in a manner that is illegal, oppressive or fraudulent.

13-C M.R.S. § 1430(2)(B) (2018). The plaintiff has not presented sufficient evidence to establish that the directors of Carefree Windows are acting or will act in a manner that is illegal, oppressive or fraudulent and therefore, the court denies Plaintiff's request for judicial dissolution.

**Conclusion:**

For the reasons provided above, the court rules against the plaintiff on all of their counts except, in part, their request for declaratory judgment and the court rules against the defendants on all of their counterclaims against the plaintiff. The court recognizes Lester Cox's estate as the owner of all of the deceased Lester Cox's shares in Carefree Window & Siding Co. Inc. If the corporation makes any distributions in the future, the estate is entitled to a proportionate share of the distribution in accordance with the shareholder agreement. The court further concludes that nothing in the shareholder agreement compels the corporation to repurchase Lester Cox's share from his estate or to distribute life insurance proceeds from the company's policy, on which it was a beneficiary, to the estate. Lastly, the court concludes that the 2005 GMC truck that is titled to Jeffrey Mayhew and was

15

in Lester Cox's possession when he died is Jeffrey Mayhew's property and that he has the right to take possession of the vehicle.

Entry:

1. The court rules in favor of the defendants on Count I (breach of fiduciary duty), Count II (breach of the duty of good faith and fair dealing), Count III (fraud), Count IV (unjust enrichment), and Count VI (judicial dissolution) of the plaintiff's complaint.
2. The court grants Count V (declaratory judgment) of the plaintiff's complaint in part and denies in part.
3. The court recognizes Lester Cox's estate is the owner of all of the deceased Lester Cox's shares in Carefree Window & Siding Co. Inc. If the corporation makes any distributions in the future, the estate is entitled to a proportionate share of the distribution in accordance with the shareholder agreement.
4. Under the shareholder agreement, Carefree Windows & Siding Co. Inc, is not required to repurchase the deceased Lester Cox's shares in the corporation and is not required to distribute the proceeds of a life insurance policy on Lester Cox, which the corporation purchased and was listed as beneficiary of, to Lester Cox's estate.
5. The 2005 GMC truck that is titled to Jeffrey Mayhew and was in Lester Cox's possession when he died is Jeffrey Mayhew's property and Jeffrey Mayhew has the right to take possession of the vehicle.
6. The court rules in favor of the plaintiff on Count I, Count II, Count III, and Count IV of the defendants' counterclaims.

1/3/20
Date

William Anderson, Justice
Maine Superior Court

ORDER/JUDGMENT ENTERED IN THE
COURT DOCKET ON: 1-7-20

16